## 8325

### STATE v. BOOZER.

1. APPEAL.—In cases involving human life the Court will overlook irregularities in "cases" for appeal.
2. CHARGE.—It is a sufficient charge of requests if the substance of them, or the principles they cover are given. Under the defense of *not guilty* it is not error to instruct the jury that the plea is self-defense when all the crimes incident to a homicide are defined.
   MR. JUSTICE FRASER *dissents.*
3. IBID.—Where the killing is admitted in the "Case," this Court cannot hold it error in the trial Court to so state in his charge.
4. IBID.—Using a decided case as an illustration of a legal principle, held not to be error in this case.
5. IBID.—REQUEST—WITNESS.—If counsel desired an instruction that the fact that defendant did not testify should not be taken against him, he should have so requested.
6. VERDICT.—There is no rule of law requiring defendant's counsel to be present when the verdict is received in a felony case.

Before ERNEST GARY, J., Newberry, Summer term, 1912. Affirmed.

Indictment against Sam Boozer and John C. Hipp. Boozer appeals.

*Mr. G. G. Sale,* for appellant.

*Solicitor R. A. Cooper,* contra.

September 26, 1912.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    The defendant was convicted of the murder of James S. Gilliam and sentenced to death at the Summer term, 1911, of the Court of General Sessions for Newberry county.    While the main reliance is on alleged errors in the charge, the appeal as first presented contained only isolated excerpts from the charge, the proposed case was not assented to by the solicitor, and there was nothing to show that it was ever served on him.    In place of exceptions the record contained the grounds on which a motion was made for a new trial.    In this condition of the case the Court ordered the record to be amended by including the charge of the Circuit Judge. That order has now been complied with.

In favor of life we waive all irregularities in the record. It is not necessary to delay the decision even to have the case as made up served on the solicitor, for accepting the record as made up *ex parte* on behalf of the defendant, we think there was no error on the trial. The following is a statement of the facts of the case as made up by defendant's counsel:

"It appears from the testimony that on the day of the killing Sam Boozer and others living on the plantation of John Hipp had gone to the town of Newberry, some twelve miles distant; that during the morning James S. Gilliam, the deceased, who was superintendent or foreman of the farm owned by Mr. Hipp, and upon which Sam Boozer worked and resided, while drinking had chased Clayton Boozer, wife of Sam Boozer, out of his (Gilliam's) yard with a gun; had forcibly entered the house of Sam Boozer and in the struggle which took place cut May Belle Rook, the stepdaughter of Sam Boozer, on the throat, and Clayton Boozer, Sam Boozer's wife, slightly on the hand.    The

testimony further shows that John Hipp received a message while in the town of Newberry, requesting him to come to his plantation to quiet a difficulty, but it appears that neither Hipp nor Sam Boozer knew the parties involved in the difficulty, until they reached the plantation about four o'clock on the afternoon of the killing; that Hipp, together with Sam Boozer and Amos Boozer, went from Newberry to Old Town, which is a railroad station near Hipp's plantation, where the killing occurred, on the train leaving Newberry about two or three o'clock. When they reached the plantation, everything was quiet and Gilliam was lying down. Clayton Boozer and May Belle Rook, after the difficulty with Gilliam in the morning, had left the place and gone to the house of a colored man living on an adjoining plantation, where Sam Boozer found them shortly after his arrival from Newberry. It appears that Hipp's wagon, loaded with provisions for different laborers, Sam Boozer among them, reached the plantation late in the afternoon and before sundown, and was to be unloaded at what the witness called the "big house," being the house in which Gilliam, the overseer, lived. Sam Boozer came to Gilliam's back yard with his shotgun about the time the wagon came; Gilliam left his house, going out of the back door towards the lot for the purpose, as he stated, of feeding the stock, and this seems to be the first time that he and Sam Boozer had met since the difficulty of the morning. The witnesses do not agree as to the conversation which took place between them, but, at any rate, all the witnesses testify that Gilliam turned and started back into his house, whereupon Sam Boozer shot him in the back of the head, killing him instantly."

The requests to charge were as follows:

I. "Where all the facts are proved, the jury must say whether there was malice, and not imply it from the mere fact of killing.

32—92

II. "Whether the killing was under sudden heat and passion or from a settled, deliberate purpose, must be determined by the jury upon the facts of the case.

III. "Although there may have been time for deliberation, if the purpose to kill was formed and immediately executed in a passion, especially if the passion was aroused by a recent provocation, the murder is not deliberate and premeditated.

IV. "While an intentional homicide, if neither justifiable nor excusable, is nominally murder, yet where it is committed upon a sudden heat of passion, aroused by adequate provocation, technical malice being lacking, the crime is reduced to manslaughter.

V. "Although anger is the passion usually existing in cases of killing in sudden heat and passion, yet any other passion, as sudden resentment or terror rendering the mind incapable of cool reflection, may reduce the grade of the crime from murder to manslaughter.

VI. "A violent attack upon, or injury to, a relative or friend in the presence of defendant, or under peculiar circumstances even in his absence, but shortly before the homicide, may be adequate provocation to reduce a homicide to manslaughter, if it was not committed with malice."

Reference to the charge shows that the substance of every sound proposition of law contained in the requests was given to the jury. It is true the jury were told that the defendant relied on the plea of self-defense, but the charge covered the subject of manslaughter and the requests to charge in this language: "The boast of the law is to protect human life, the Constitution guarantees the protection of human life, but the law realizes that when a man is in hot blood and has been provoked by that reasonably, not entirely dethroned his reason, but while the blood is coursing hot through his veins and he is in a temper, his feelings are wrought up, and if he has had such provocation as would be likely to put him in that condition,

and he acts then, on the spur of the moment, the law will put that veil of charity over his acts, and says: Now, you acted beyond the pale of the law, but inasmuch as you did it in hot blood, while your passions were aroused while you were smarting from an indignity that was reasonably a legal provocation, we will put that veil of charity over your act, and reduce the killing under those circumstances, if not done in malice—will reduce the killing under those circumstances, to manslaughter, which is the killing of another without malice aforethought, either expressed or implied, and upon sufficient legal provocation. To give you an illustration: Two citizens meet on the street who have no ill will one against the other, but they get into a conversation; that waxes into a debate, into a dispute, hot words pass, and they get to blows, and while one is smarting under the insults he has had, the blow, possibly, that he has had, he strikes, and with no intention of taking human life, but while he is in hot blood, and the result of that blow produces death, the law would throw that veil of charity I have been speaking of over his acts—you did it in hot blood, and I will not hold you to that strict accountability as if you had gone off, prepared yourself, made preparations, and then come back to avenge your grievances, whether real or imaginary. It does not permit one to take out his vengeance, and then undertake to excuse himself on the ground that he was in hot blood."

The Court cannot hold that the Circuit Judge erred in assuming that the killing by the defendant was admitted, when the statement of facts submitted on appeal contains that admission.

Careful consideration fails to show how reference in the charge to the case of *State* v. *Emerson* was injurious to the defendant. It was used merely as an illustration of the doctrine that the plea of self-defense is not available to one who brings on the difficulty. *State* v. *James,* 86 S. C. 49.

The omission from the charge of an instruction that defendant's failure to testify was not to be taken against him is not reversible error. If the defendant's counsel desired such an instruction, it was his duty to call it to the attention of the Circuit Judge. *State v. Adams,* 68 S. C. 421, 47 S. E. 676.

We are unable to find any case in this State deciding the question whether it is necessary to the validity of a verdict in a felony case that defendant's counsel should be present when it is received. The rule generally followed is that the presence of the defendant is necessary, but not the presence of his counsel. *Homer* v. *State,* 85 Md. 562, 37 Atl. 26; *Martin* v. *State,* 79 Wis. 175, 48 N. W. 119; *Barnard* v. *State,* 88 Wis. 659, 60 N. W. 1058; *O'Bannon* v. *State,* 76 Ga. 32; *Baker* v. *State,* 58 Ark. 513, 25 S. W. 603; *Huffman* v. *State,* 28 Tex. App. 174, 12 S. W. 588.

The judgment of this Court is that the judgment of the Circuit Court be affirmed and that the cause be remanded so that another day may be assigned for the execution of the sentence.

MR. JUSTICE FRASER. I cannot concur in the opinion of the majority of the Court. The defendant's plea was "not guilty" and his defense anything that negatived or reduced the grave offense charged. To charge that the defense was "self-defense" tended to eliminate from the minds of the jury all other defenses.

It seems to me that the defendant would have been very unwise to confine his defense to self-defense, when the deceased was shot in the back of the head, especially when two women of his household had been wounded in his house by the deceased. I do not mean to say that the defense was sufficient and ought to have prevailed. I simply do not think that where the plea is "not guilty" that the Court has the right to restrict the defense. In *The State* v. *Wise,*

32 S. C. 54, 10 S. E. 612, the Court says: "He pleaded not guilty and the issue was made upon that plea. The issue involved the questions: First. Had a homicide been committed by the appellant? And if so, secondly, what was the degree of the offense committed—whether murder, manslaughter or excusable homicide?" The plea of "not guilty" put in issue every fact in the case. He did not go on the stand, so he could not have admitted anything.

His Honor charged: "Now, the question that comes up, in the first instance as to Sam Boozer, is not whether he killed the deceased or not; that is not the issue; that is inferred or implied from the defense that he set up. By his defense and the evidence, his defense is that he did it, but that he did it under such circumstances as that the law would excuse him for it—in other words, that he did it in self-defense."

It is true that his Honor charges as to manslaughter, but I don't think his illustration which deals solely with a blow to the defendant covers a case in which the evidence shows a blow to the wife of the defendant.

The defendant requested a charge on that subject, and I do not think it was covered by the charge.

For these reasons I cannot concur in the opinion of the majority.