### 11960

#### SUMTER TRUST CO. *ET AL.* v. HOLMAN
#### (132 S. E., 811)

1. TRIAL—COURT'S READING TO JURY FROM PREVIOUSLY DECIDED CASE,
   AND STATEMENT THAT JURY WOULD FIND ANSWER TO QUESTION
   BEFORE THEM IN THAT CASE, HELD NOT ERROR.—In proceeding in
   solemn form to prove will, it was not error for Court in charging

NOTE: As to what constitutes capacity or incapacity to make will,
see notes in 27 L. R. A. (N. S.), 2; L. R. A., 1915-A, 444.

jury to read from a previously decided case, and state to jury that they would find answer to question before them in that case.

2. TRIAL—COURTS MAY PROPERLY ILLUSTRATE LAW APPLICABLE BY USE OF PREVIOUS DECIDED CASES AND MAY READ THEREFROM.—Courts may use previously decided cases to illustrate to jury principles of law applicable to case on trial, and when applicable may even read announcements of law from such cases.

3. TRIAL—Whole charge must be considered in determining whether there is prejudicial error.

4. WILLS—Weakness or feebleness of mind is insufficient to invalidate will.

5. WILLS—Capacity to make will is tested by whether testator knows his estate, the objects of his affection, and to whom he wishes to give his property.

6. WILLS—That others would have made different disposition of estate than testator made is not ground for declaring will void.

7. WILLS—Instruction that jury is not concerned with testator's disposition of his property *held* not error on issue of insane delusion.

8. TRIAL—In view of Const. Art. 5, § 26, trial Judge must not intimate to jury his opinion on facts or credibility of witnesses or evidence.

9. APPEAL AND ERROR—THAT REMARKS OF JUDGE EVIDENCING DISBELIEF OF WITNESS WERE FAVORABLE TO CONTESTANT HELD NOT TO PRECLUDE HER COMPLAINT THEREOF ON APPEAL, WITNESS BEING FAVORABLY KNOWN TO SOME OF JURORS.—In proceeding to prove will, fact that remarks of Court evidencing disbelief of testimony of particular witness were favorable to contestant *held* not to preclude her from complaining thereof on appeal, where witness was citizen of high standing and so favorably known to some of jurors that an attack on him, real or seeming, by judge, might cause resentment of jurors and tend to cause them to bring in a verdict which would vindicate the witness.

10. APPEAL AND ERROR—COURT'S STATEMENT, IN EFFORT, TO CURE SUPPOSED ERROR IN EVIDENCING DISBELIEF OF WITNESS' TESTIMONY WHEREIN HE STATED WITNESS WAS ONE OF BEST CITIZENS OF TOWN, HELD REVERSIBLE ERROR (CONST. ART. 5, § 26).—In proceeding to prove will, statement of Court, in an effort to cure any error which he had previously made in evidencing disbelief of a particular witness' testimony, wherein he said, "I understand that the witness C. is one of the best citizens of the town, but the Judge did not know that," *held* reversible error as intimating what weight and credence should be given to testimony of the witness, and as participation in jury's finding of fact, in violation of Const. Art. 5, § 26.

Before MEMMINGER, J., Sumter, December, 1923. Reversed.

Proceeding by the Sumter Trust Company, as executor, and trustee, under the last will and testament of Frank H. Holman deceased, and others, to prove the will, opposed by Somers D. Holman, contestant. From a decree sustaining the will, contestant appeals.

The following are appellant's exceptions:

I. His Honor erred, it is respectfully submitted, in having the following controversy with the witness T. H. Clarke in the presence of the jury:

"The Court: How do you account for the second wife's flying into a rage when the first wife was mentioned?

"The witness: I cannot account for it.

"The Court: How do you expect the jury to believe that this second wife would go into a rage when his first wife was mentioned?

"The witness: I don't know, your Honor, but such is the case.

"The Court: How do you expect me to believe it. That evidence is before me as well as the jury, you know."

It is respectfully submitted: (a) That the above-quoted questions of the trial Judge amounted to a comment upon the evidence; whereas, the appellant had a right to have her case submitted to the jury without any impressions conveyed to their minds as to the opinion of the trial Judge of any testimony given in the case. (b) The said comments of the trial Judge, Mr. Clarke being a gentleman of high standing in the community, tended to prejudice the jury in his favor and likely to affect the verdict through the desire of the jury to vindicate Mr. Clarke.

II. His Honor erred, it is respectfully submitted, in saying to the jury: "I understand that the witness Clarke is one of the best citizens of the town, but the Judge did not know that." This being error, it is respectfully submitted,

because the Judge, under the law, had no right to give this testimony in behalf of a witness who had testified against the appellant, and the same amounted to a charge as to the weight which the jury should give to the testimony of this witness. The respondents themselves would have no right to introduce testimony as to the character and standing of the witness Clarke, unless the same had been attacked, and we respectfully submit the trial Judge had no right to do so.

III. His Honor erred, it is respectfully submitted, in reading to the jury, as he did, from the case of *Matheson v. Matheson,* and in telling them that they would find the answer to the question that they would have to decide in the *Matheson Case.* This being error, it is respectfully submitted: (a) The present case, in order to be decided aright, would have to be decided upon the facts of this case, and not upon the facts which were proved in the *Matheson Case.* (b) It was error for his Honor to read to the jury the charge of the trial Judge in the *Matheson Case,* which was necessarily based upon the questions at issue in that case, and tell the jury that the said charge was applicable to the present case, which was based upon an entirely different proposition. In the *Matheson Case,* the testator omitted the name of one of his sons, and the main question was: Did he omit that name on purpose, or was his mind in such condition that he forgot about this son entirely? Whereas, in the present case the issue was: Did the testator have such an insane delusion against his wife that the same injuriously affected the provision that was made for her? There was no question as to whether he remembered his wife, because he referred to her several times in the will. (c) In that in reading from said charge, his Honor repeatedly told the jury, in effect, that if the testator remembered those he was leaving out of the will, and did it on purpose, the will would be valid; whereas, this was not good law in the present case, where the question of insane de-

lusion injuriously affecting the provision made for the wife was at issue. (d) In thus reading from the Judge's charge in the *Matheson Case,* his Honor charged the jury that they would have to find that Holman did not know what he was doing when he wrote the will; did not know the effect of what he was doing; did not know the property he was trying to dispose of, and those to whom he intended to leave his estate. This being error, because, under the law, if the testator was laboring under an insane delusion which would prejudice him against his wife so that he materially cut down the provision that he would otherwise have made for her, the will would be invalid, even though he did comprehend the nature and effect of what he was doing, even though he did know the property he was disposing of, and even though he did know to whom he intended to leave his estate, and even though he did do it on purpose.

IV. His Honor erred, it is respectfully submitted, in charging the jury as follows: "I charge you that mere weakness of mind or feebleness of mind is not enough to invalidate a will; incapacity is more than that. Before you can find incapacity, you must be satisfied by the preponderance of the evidence that he did not know what he was doing when he made that will; that he did not have intelligence enough to comprehend the nature and effect of what he was doing; that he did not know the property he was trying to dispose of, and the objects of his bounty, those to whom he intended to leave his property; and you must be satisfied of that before you can find that Holman did not have mental capacity to make a will. Unless the contestant can show that he did not have that capacity—the burden of proof being upon them to prove that by the greater weight of the testimony—then the will stands." The error being that in the present case the will was being contested on the ground that the testator was laboring under an insane delusion against his wife which affected the provision made for her; and where a will is being contested upon this ground, it is

not correct to charge the jury that the will was valid if the testator knew the effect of what he was doing, knew the property he was disposing of, and knew those to whom he intended to leave it.

V. His Honor erred, it is respectfully submitted, in charging the jury as follows: "Now, you see, gentlemen, it has come down to a very narrow compass: 'At the time that the late Frank K. Holman executed the instrument in writing which purports to be his last will and testament, did he then have sufficient mental capacity to make a will? Now, what is sufficient mental capacity to make a will? That is stated to you in this case which I have read; I have read it twice, and no doubt you understand it." The error being that his Honor thus charged the jury that they should consider the charge of the Court made in the *Matheson Case* as applicable to the facts in the present case; whereas, the said charge was not applicable, because in the *Matheson Case* the question at issue was whether or not a father had omitted to make a provision for his son on purpose, or whether it was done through mental infirmity, and the issue in the present case was entirely different, and was whether or not the testator was laboring under an insane delusion against his wife at the time he made his will, making certain provision for her.

VI. His Honor erred, it is respectfully submitted, in charging the jury the second request of the proponents as follows: "If at the time that Dr. Holman signed the paper purporting to be his will, he knew his property and the persons whom he desired to have it, he could make a valid will." The error being that this is not good law where a will is being contested on the ground of insane delusion. A person with an insane delusion against his wife might know his property and might know the persons whom he desired should have his property, and still the will might be invalid, because an insane delusion made him desire to leave his

property to some one other than his wife; whereas, if he were not laboring under an insane delusion he might have made his wife a beneficiary, or a beneficiary to a larger extent than the will provides.

VII. His Honor erred, it is respectfully submitted, in charging the sixth request submitted by the proponents: "The jury is charged that they are not concerned with the provisions of the will or the division of the property therein made; but that they are only to consider and determine whether the testator, at the time the will was executed, was of sufficient mental capacity to execute the will." It is respectfully submitted that the jury in the present case were concerned with the provisions made for the widow in the will, and as to what proportions of the property she obtained under the will, because it was within the province of the jury to determine whether or not this affected the provisions he made for his wife. They could not do this without concerning themselves with the provisions of the will and the division of the property therein made.

VIII. His Honor erred, it is respectfully submitted, in refusing the following request made by Mr. Epps, of counsel for the contestant:

"Mr. Epps: I would like for your Honor to charge the jury in connection with what your Honor read from the *Matheson Case:* The question there was, the old man had forgotten one of his children. Suppose a man thought he had an illegitimate child, and in the provision he made for the child, he was laboring under an insane delusion, even if he remembered the child, but was influenced by an insane delusion, the will would be invalid. We ask your Honor to charge the jury in connection with that, if they should find—of course the burden is upon us to show—he was laboring under an insane delusion, if they find that delusion was against his widow in this case, then it would not be a valid will.

· "The Court: I have charged the jury absolutely plainly and simply all I can conceive to be the law pertaining to my enabling them intelligently to decide this question, and I shan't complicate it by stating any of these finely drawn questions."

It is respectfully submitted: (a) That Mr. Epps here requested his Honor to modify the charge as given to the jury from the *Matheson Case* so that the jury could intelligently and fairly apply it to the present case, and his Honor should have made the explanation so requested. (b) This request was good law and applicable to the case, inasmuch as his Honor had read to the jury from the *Matheson Case* and had repeatedly stated to them that the test to be applied in this case was whether or not the testator knew his property and knew those to whom he wished to give it; whereas, the test should have been: Was he laboring under an insane delusion against his wife at the time he made the will, and did this mental incapacity injuriously affect the provisions which he would otherwise have made for her?

(c) His Honor intimated that this was a finely drawn distinction with which the jury should not trouble themselves; whereas, it was a plain legal distinction, well recognized by the Courts, and without which the jury were in no position to decide the case aright.

*Messrs. Epps & Levy* and *A. L. Gaston,* for appellant, cite: *Effect of insane delusions on provisions of will:* 90 S. C., 196; 65 S. C., 558; 40 Cyc., 1013; 1 Williams on Executors, 33.

*Messrs. Purdy & Bland* and *Lee & Moise,* for respondents, cite: *Injustice of a will does not render it irrational:* 18 S. E., 313; 4 McC., 183.

April 15, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The last will and testament of Dr. Frank K. Holman, deceased, was proved in common form in the Probate Court of Sumter County. Thereafter Mrs. Somers D. Holman, the widow of the testator, filed the prescribed notice, requiring that the instrument be proved in solemn form of law. Thereupon, the Sumter Trust Company, qualified executor and trustee, under the will, instituted the present action. The trial was first had before Hon. Thomas E. Richardson, Probate Judge of Sumter County, and resulted in a decree, in which it was held that Dr. Holman was not of sound and disposing mind, memory, and understanding at the time he executed the alleged will; and said instrument was refused probate in due form, the probate in common form was revoked, and it was declared that Dr. Holman died intestate. From the decree of the Probate Judge, the proponents of the will appealed to the Court of Common Pleas for Sumter County. A trial, *de novo*, was had before his Honor, the late Judge Robert Withers Memminger. The only issue submitted to the jury was:

"At the time that the late Frank K. Holman executed the instrument, did he then have sufficient mental capacity to make a will?"

The jury answered, "Yes," to the question. A motion for a new trial, made by the contestant, was refused. The contestant, Mrs. Holman, thereupon appealed to this Court, and she asks for a new trial, assigning her reasons therefor in eight exceptions.

Six of the exceptions, 3 to 8, both inclusive, allege error in the charge of the presiding Judge to the jury and his refusal to charge as requested.

The propositions of law as laid down by the Court, to which exception has been taken, and the refused request, will be reported.

In passing upon these exceptions, we shall group them. Exceptions 3 and 8 will be disposed of together. Those

numbered, respectively, 4, 5, 6, and 7 will be considered at the same time.

Exception 3 complains of error on the part of the trial Judge in reading to the jury from the case of *Matheson v. Matheson,* 118 S. E., 312; 125 S. C., 165, and in stating that they would find the answer to the question they would have to decide in the cause on trial in the *Matheson Case.*

Exception 8 alleges error on the part of the Judge in not charging the oral request of the contestant that, in connection with what the Court had read from the *Matheson Case,* the jury be further charged as to the insane delusions.

It was not improper for the Court to use cases, decided by this Court, for the purpose of illustrating to the jury principles of law applicable to the case on trial; and a trial Judge is permitted even to read from such cases the law as announced by this Court, when it is applicable to the case being tried. *State v. Boozer,* 75 S. E., 864; 92 S. C., 495. *Magill v. Southern Railway,* 78 S. E., 1033; 95 S. C., 315. *Williams v. A. C. L. Railroad Co.,* 83 S. E., 604; 99 S. C., 400. While facts in cases may be entirely different, and often they are so, legal principles involved may be identical. A careful reading of the charge of the presiding Judge will show he did not go into the facts of the *Matheson Case.* He simply called attention to the legal question decided in that case, and the question there was practically the same as that in the case at bar. If the Judge had charged, as he was orally requested to do, he might have gone into matters of fact. These two exceptions, in a manner, are contradictory to each other. They complain, first, that his Honor went into the facts of the *Matheson Case,* and then charge error because he later refused to go into those facts. We think his refusal to go into the facts was correct under the authorities above cited. And the principle asked to be announced in the oral request

was substantially given in the main charge and in requests of the contestant.

The other exceptions to the charge question the soundness of the law as laid down by his Honor in certain propositions in his general charge and in requests of the proponents.

3-7 The whole charge must be considered in determining if there was prejudical error. Taking the language of the charge excepted to, in connection with other portions and including the requests of the proponents and those of the contestant, we are of the opinion that the charge was free from harmful error. The decisions in this State are to the effect that a will is not to be invalidated simply because of "weakness of mind or feebleness of mind" on the part of the testator. The testator's capacity to know his estate, the objects of his affections, and to whom he wishes to give his property, is the test of capacity to make a will. A person, with the required mental capacity, has the right in this State, except in a few especially prohibited instances, to make a will, which to others may appear unfair, unjust, and unreasonable. It is sometimes proper, for the purpose of ascertaining if the testator had the necessary mental capacity, to inquire into the character and value of his estate, and his associations with, and relations and attachments to, those who would inherit his property if he should die intestate; just as it may be proper, for that purpose, to show strength or weakness of body, and delusions and hallucinations to which he may have been subject. But as a matter of law, a Court should not declare void a will, legally executed, for the sole reason that other persons would not have made the same disposition of the estate as was made by the testator. *Matheson v. Matheson, supra; In re Freeman's Will,* 126 S. E., 764; 132 S. C., 389; 40 Cyc., 1024 *et seq.* It is clear to us that when his Honor told the jury they were not "concerned with the division of the property," he intended to convey the idea we have expressed, and that he made it so understood to the jury.

It should not be overlooked that the presiding Judge charged, at the request of the contestant:

"An insane delusion is a belief that is not based on reason and which cannot be dispelled by argument. An insane delusion will invalidate a will where it affects the provision made for an heir or next of kin even though the testator may have been rational on other subjects."

This was, substantially, contestant's oral request.

The Court also stated, in charging proponents' requests:

"Of course you take that in connection with all that I have said to you. If the contestant proved that this man at one time was insane, had no capacity to make a will, had what they call a delusion against some person particularly, of course then the burden shifts to the other side to prove by the greater weight of the testimony that he was not in that condition of delusion at the time he made it."

All exceptions relating to the charge are overruled.

The first exception pertains to a colloquy between Mr. T. H. Clarke, a witness for the proponents, and the presiding Judge. The second exception touches the statement made by the Court the following day, in which he referred to the incident with that witness. As the dissenting opinion of Mr. Justice Cothran sets forth the colloquy and the statement of the presiding Judge with reference thereto, it is unnecessary to set these out here. The two exceptions will be taken up together.

The questions asked by the Court of the witness, and his comments at that time, were not a part of the charge to the jury. It may be thought from a superficial examination of some cases that this Court has laid down as a rule that comments and questions of the presiding Judge during the examination of a witness are never in violation of Section 26 of Article 5 of the Constitution, which is as follows:

"Judges shall not charge juries in respect to matters of fact, but shall declare the law."

But that is not a correct view.

In *State v. Thrailkill,* 50 S. E., 553; 71 S. C., 142, it was held not error for the Circuit Judge to state, in admitting testimony, "that it was natural for deceased to go where his brother had been shot," as the same was not an expression of an opinion that deceased went on a peaceful mission.

In *State v. Miller,* 53 S. E., 427; 73 S. C., 280; 114 Am. St. Rep., 82, a witness, offered to prove the reputation of the deceased for peace and good order, testified, "So far as I know, it was good." Thereupon the Court stated the proper manner in which to prove reputation; and it was held that the remarks were proper.

In *Webb. v. Railroad,* 56 S. E., 956; 76 S. C., 200; 9 L. R. A. (N. S.), 1218; 11 Ann. Cas., 834, it was decided that certain remarks of the Circuit Judge were harmless, because he "merely stated that which the defendant could not fail to infer" from certain facts, which had been established without dispute.

Perhaps one of the strongest cases, in which remarks of the Judge were held not in conflict with the constitutional provision, is that of *Rearden v. Insurance Co.,* 60 S. E., 1106; 79 S. C., 526. In that case, the presiding Judge, referring to life insurance companies, said:

"They are the smartest people on the face of the globe. Let the Courts pass one rule to-day and they will frame a rule to meet it the next."

It was held that as these remarks occurred in a colloquy between the Court and counsel, there was no error.

In *State v. Driggers,* 66 S. E., 1043; 84 S. C., 530; 137 Am. St. Rep., 855; 19 Ann. Cas., 1166, a number of questions were asked by the presiding Judge of witnesses. Appellant contended these were prejudicial to him. Mr. Justice Woods, speaking for the Court, in a unanimous opinion made this statement:

"We have examined with care the connection in which these expressions were used by the Circuit Judge, and have reached the conclusion that while it would have been better to omit them, yet they did not amount to such expressions of opinion on the merits of the defense of insanity, as to indicate that the Circuit Judge was a participant in the consideration of that question of fact; and, therefore, they do not fall within the rule stated in *Willis v. Tel. Co.,* 53 S. E., 639; 73 S. C., 383, and *Latimer v. Electric Co.,* 62 S. E., 438; 81 S. C., 379."

In the *Willis Case, supra,* where the opinion was also unanimous, Mr. Justice Woods, considering the question of remarks of the Judge in the course of the trial, announced the following principle:

"No doubt, if such comments were carried to an extent that would make the Circuit Judge a participant in the decision of the facts upon which the issue depended, this would be good ground for a new trial, as amounting practically to a disguised charge on the facts."

In the *Latimer Case, supra,* it was held by this Court that remarks of the presiding Judge on a motion for nonsuit transcended the limits of his power and discretion, and the Court quoted, with approval, the words taken herein from the *Willis Case.*

In *State v. Jackson,* 69 S. E., 883; 87 S. C., 407, where the Judge questioned witnesses at some length, this Court decided there had been no error, for the reason that the remarks were admonitions to a witness, who had by hesitation and indefiniteness consumed much of the time of the Court before giving a definite opinion as to matters inquired of him, and that other questions were fair and propounded for the purpose of eliciting the truth. But in that case this was said:

"There can be no doubt of the right and the duty of the Circuit Judge to ask such questions of witnesses as seems necessary to elicit the evidence relevant to the decision of

the issue on trial. Yet so great is the weight which a jury attaches to an intimation of opinion coming from one set apart to preside over the Court because of his impartiality and capacity to decide justly, that the duty is ever present to a Judge to guard against questions or remarks that may so influence the jury as to make the Judge a participant in their findings of fact. This duty is imposed by the Constitution and a departure from it tending to affect the decision by the jury of a material issue of facts must result in a new trial."

In *Enlee v. S. A. L. Ry.*, 96 S. E., 492; 110 S. C., 146, Mr. Justice Watts, speaking for the Court, all the other justices concurring, referring to the cited section of the Constitution, used these words:

"The purpose of the section of the Constitution is to prevent the trial Judge from intimating to the jury his opinion of the case what weight or credence should be given to the evidence and participating in any manner with the jury's finding of fact. This the Judge cannot do."

A careful reading of the decisions referred to, and other cases dealing with the cited section of the Constitution, will lead to the conclusion that there had been no real inconsistencies in the holdings of our Court as to the construction to be given the provision of the Constitution quoted herein. The rule stated by Mr. Justice Watts in the *Enlee Case* is a brief and concise statement of the former holdings of the Court, particularly the views as expressed by Mr. Justice Woods in the *Willis* and *Latimer Cases*. In the cases mentioned, which may appear, upon cursory examination, apparently as exceptions to the rule of the *Enlee Case,* it will be observed that this Court held that the comments of the trial Judge were either not expressions of opinion on the facts, or they were proper, or concerned facts which had been established without dispute, or occurred in colloquies with counsel, or did not touch material matters involved, or were so harmless as not to affect the result. It may be as-

sumed that the justices of this Court, who have participated in the decisions mentioned, and others touching the same subject, recalled their own experiences as trial lawyers or trial Judges; and they realized, as we understand, the difficulties confronting trial Judges in hotly contested cases. In such cases there is on each side at least one strong advocate, believing to the utmost in the justice of his cause, seeking as he views it, not to take for his own client an undue advantage, but to prevent the opposing counsel from putting that client to disadvantage. Then the witness who may be too timid to speak readily, or so unfair as to be evasive, or too eager to answer, quickly and favorably, questions objected to as incompetent; often, two or more lawyers and a witness, all talking at the same moment. Rules of evidence and legal principles, examined carefully by counsel, are presented to the Court and, perhaps, they are new and novel; and in some instances a question is raised which the Judge has not had occasion to investigate for years. It is not to be wondered at that sometimes "his Honor" may become temporarily confused or impatient, and, resultingly, he may say, absolutely unintentionally, something which appears at the time, or afterward, especially to counsel who have failed to win the desired verdict, as indicative of an opinion of the Judge on the merits of the cause.

With the picture of the ordinary Court scene in mind, and with the desire to mete out substantial justice, this Court, while endeavoring to enforce the right of the jury to pass on questions of fact, nevertheless has been liberal in its construction of the wording of the Constitution, remembering that "the letter killeth, but the spirit giveth life."

We have the view that the interpretation of Section 26 of Article 5, as laid down in the *Enlee Case,* when followed properly, will preserve the letter of that provision and at the same time give full effect to its spirit.

Now, let us measure Exceptions 1 and 2 by the rule announced. That there may be no misunderstanding, let it be

fully understood that, in discussing these exceptions, what may be said is said without any appraisal on our part of the value of any testimony, and without any opinion of this Court as to the merits of the contentions of the respective litigants. We simply let the record speak for itself as to legal questions.

While the witness Clarke was not a party to the litigation he was closely connected by marriage with some of the parties. His testimony and that of the contestant, a witness for herself, conflicted at many points. The questions put by the presiding Judge to Clarke indicated strongly that he doubted the evidence of the witness. Had the result of the trial been otherwise than it was, is it not reasonable to believe that the respondents here would have come to this Court, seeking reversal because of this very incident? And under the principle declared in the *Enlee Case,* is it not reasonable to at least surmise that such exception would have been sustained? It cannot be well gainsaid that the interrogatories of the Judge intimated his opinion as to "what weight or credence should be given to the evidence"; and the record discloses that no counsel engaged in the trial contributed to bring about the incident.

There may seem to be some difficulty, however, in holding that the exception based on the Clarke incident can avail the appellant because of two questions that arise: First, since the expressions of the Court were favorable to her, may she now properly complain thereat? Second, did the later remarks of the Judge cure any error which he first may have fallen into?

There is some force to the argument of the appellant to the effect that, admitting the witness to be a citizen of high standing and favorably known to some of the jurors, an attack, real or seeming, made upon him by the presiding Judge, may have influenced these jurors to resent such attack, and may have caused them to feel that they should find a verdict which would, in a way, be a vindi-

· cation of the witness.    If the Court, without contribution
on the part of the appellant, placed her in a situation of
disadvantage, then she should not be precluded from raising
the question.    And it appears to us that the rule of the
*Enlee Case* as to a participation by the Judge with the jury's
finding of fact was violated.

But if the error first made was corrected, still in that
correction there was other error, perhaps more fatal
than that preceding; error not only in the way of
the appellant's right to a fair trial, but one directly conflict-
ing with the recognized right of a petit jury, under the Con-
stitution, namely to judge of the credibility of witnesses, for
proof of matters of fact depends upon the witness who re-
lates them.

It is apparent that the distinguished jurist, who presided,
realized that he had, doubtless, trespassed not only upon the
right of the witness and the right of the proponents, but as
well upon a right and duty of the jury.    As a·man of great
moral courage, he endeavored publicly to correct his error
(a difficult thing for even strong men to do).    With the
desire to be fair and courteous to litigants, witnesses, and
jurors, alike, the fearless Judge sought to do what he con-
ceived to be the manly thing under the circumstances.    On
his own motion he made a statement, addressed to the jury,
for the purpose of correcting his previous mistake.    There-
in, unfortunately, he used these words:

"I understand that the witness Clarke is one of the best
citizens of the town, but the Judge did not know that."

In that declaration, the Court conflicted with the holding
of the *Enlee Case* in two respects.    He "intimated" to the
jury "what weight or credence should be given to the evi-
dence" of the witness.    He "participated" in a "manner"
with the "jury's finding of fact."    In a way, he made him-
self a witness as to the reputation of Mr. Clarke.    The
proponents could not have offered testimony as to the repu-
tation of the witness, since his reputation had not been as-

sailed by the contestant. The Court did, for proponent's witness, something they could not have done for themselves, at the time. The credibility of all the witnesses and the effect of their evidence were matters for the jury. *Southern Coal Co. v. Rice,* 115 S. E., 815; 122 S. C., 484. *Furman University v. Waller,* 117 S. E., 356; 124 S. C., 68; 33 A. L. R., 615.

It is true that it is to the interest of the State that there should be a speedy end to litigation, and especially is this true when litigation is between members of families. But there are certain rights given to the people of the State, including jurors, witnesses, litigants, generally, and in fact the whole citizenship, which are higher than the right of any particular litigant. One of these rights is that of a fair and impartial trial by jury, in cases where such trial is provided. The people of this State, as well as the people of the United States, have declared that the right of trial by jury shall be preserved inviolate. This Court has held that this declaration on the part of the people applies not only to criminal, but to civil cases. *Best v. Barnwell County,* 103 S. E., 479; 114 S. C., 123. The General Assembly has no right to hamper or interfere with this provision of our Constitution. That being so, it should also be equally true that the judiciary of the State cannot either directly or indirectly annul the will of the people in this respect as expressed in most positive terms. Powerful is the right of Circuit Judges in the direction of jury trials held before them. In many instances, they may direct verdicts which the juries should render. If they feel that an injustice has been done, or that an honest mistake has been made by a jury, under authority given to them, Circuit Judges can set aside verdicts so returned and order, even on their own motion, new trials. The people of South Carolina have said that it is the province of the Courts to state the law and of juries to determine the facts. With the great power vested in their hands, let it be said, as the truth compels it to be said, that

the men who have composed the judiciary of this State have been careful in the exercise of the great authority entrusted to them. That the right of jury trial, so dear to the people of this great democratic commonwealth, may be properly preserved, let us be constantly reminded of the words of the distinguished and lamented Justice Woods, already quoted, in the *Jackson Case, supra:*

"That the duty is ever present to a Judge to guard against questions or remarks that may so influence the jury as to make the Judge a participant in their findings of fact.

We must hold that Exceptions 1 and 2 should be sustained.

The judgment of this Court is that the judgment of the Court of Common Pleas be reversed and a new trial be ordered.

In this cause the appellant has also appealed from the order of the trial Judge, dated September 27, 1924, "Settling the Case for Appeal." For this Court to have properly passed upon the question in the appeal, the "Case," as proposed by the appellant, was entirely sufficient, with the exception that the full testimony of the contestant and the witness Mr. T. H. Clarke should have been inserted. It was not necessary to require the appellant to print the entire case. The order appealed from is modified to the extent mentioned herein. The costs for printing the "Case" will be adjusted at the proper time between the parties, accordingly.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and STABLER concur.

MR. JUSTICE COTHRAN (dissenting): I concur fully with Mr. Justice Blease in his disposition of this appeal, except in reference to the remarks of the Circuit Judge relating to the testimony of the witness Clarke; as to them I do not think that the error warrants a reversal of the judgment.

It is a proverb as old as the law that it is to the interest of the State that there be an end of litigation; particularly is this true of a family dispute where feeling runs high; and in such cases, filled with an immense detail of evidence and acrimonious controversy, the verdict after a fair trial should not be disturbed except where prejudicial error is shown.

Evidently, from the size of the printed record, 218 pages, and from the number of witnesses examined, 35, the trial must have consummed several days, and I think that it is a remarkable tribute to the ability of the Circuit Judge that the only assignment of error sustained is in the unimportant incident referred to. If a case is to be remanded for a new trial, a renewal of a bitter conflict, upon an incident which appears to me so trivial, there is little hope that the end of the litigation may be reached during the present generation.

The incident referred to was as follows: T. H. Clarke was a witness offered by the proponents of the will. His direct testimony was confined exclusively to the conduct of Mrs. Holman. Upon cross-examination he testified that the testator was peculiar at times; that that peculiarity gradually increased; that he was addicted to the use of drugs; that he was sent to a sanitarium; that he was hard to get along with, and other testimony tending to sustain the contention of the contestant. He also testified that at the time the will was made the testator was sane. After testifying that Mrs. Holman was violently prejudiced against the memory of the first Mrs. Holman, the Circuit Judge turned to him, and this colloquy ensued:

"The Court: How do you account for the second wife's flying into a rage when the first wife was mentioned.

"The witness: I cannot account for it.

"The Court: How do you expect the jury to believe that this second wife would go into a rage when his first wife was mentioned?

"The witness: I do not know, your Honor, but such is the case.

"The Court: How do you expect me to believe it? That evidence is before me as well as the jury, you know."

The following day, this occurred:

"The Court (to the jury): Gentlemen, the Court would like to state to you that some just complaint may be made against the Court's remarks yesterday to the witness Clarke, who was on the stand. Of course, the conversation between the Court and the witness was not intended for the jury, but was merely a colloquy between the Court and the witness; but I will charge you in this case, gentlemen, that the Judge is not to comment on the facts in any way, shape or form, and any comments on the facts made by the Judge are not to be considered by them, as the Judge is not allowed to comment on the facts. So if anything has entered your minds by reason of the conversation of the Judge with the witness, you will have to disabuse your minds of that, entirely. It is a hard thing, in a case of this kind, for the Judge not to say something. As to the witnesses, he does not know whether they are telling the truth or not. I understand that the witness Clarke is one of the best citizens of the town, but the Judge did not know that; simply takes them as they are put on the stand; has no knowledge of the witnesses personally at all; so take that from your minds; what the Judge said in commenting to the witness, you will get that completely from your mind."

Of course, the interjection of the Circuit Judge, in the first instance, was unwarranted; but it was an error in favor of the contestant, and she has no right to complain of it; besides, it was upon an immaterial issue in the case, the domestic relations between the husband and the wife in no manner affecting the real issue of the testamentary capacity of the testator.

I do not suppose that it will be contended that the error, harmless as it may have been, could not have been corrected

by the Judge; and my opinion is that that is all the Circuit Judge intended to do.    It is well-recognized law everywhere that an error upon the trial, if seasonably and adequately corrected by the presiding Judge, cannot be assigned as reversible error.    See *Templeton v. R. Co.,* 108 S. E., 363; 117 S. C., 44, where it was held that the correction was not seasonably and adequately made and was therefore reversible error.

From the language used by the Judge, quoted above, his manly admission of error was as seasonably and adequately made as it was possible for him to have done.    The gist of the appellant's objection, however, is that in making the correction he fell into a greater error by passing upon the credibility of the witness in saying, "I understand that the witness is one of the best citizens of the town," and that his imprimatur upon the reputation and character of the witness was sufficient to induce the jury to believe that what he had testified to was true.    In the first place, I do not think that the Circuit Judge had any other idea than to wipe away the stain which he had placed upon the witness, without the slightest intention to underwrite the statement which he had made, for evidently he did not believe it.    In the second place, it referred to evidence that was entirely immaterial upon the issue of the case, the testamentary character of the testator.    In the third place, it was conceded on all sides that Mr. Clarke was all that the Circuit Judge said he was; in fact, he was that by presumption of law, as no attack had been made upon his credibility by any one except the Judge and he had obliterated the reflection which he had caused.    Counsel for the appellant state in their printed argument that Mr. Clarke was "a gentleman of high standing and intimately known to the members of the jury."    I cannot conceive that the appellant was prejudiced by the statement of the Judge of a fact which her counsel solemnly admits.

· Counsel for the appellant assume inconsistent positions: They contend that as Mr. Clarke was a man of high standing, known as such by the jury, the unwarranted attack upon him in the first instance was calculated to arouse resentment in the minds of the jury and a determination on their part to vindicate him by accepting his statement; and in the next breath they contend that the Judge invaded the province of the jury by telling them that Mr. Clarke was a man of high standing, a fact conceded by them.

In *Herndon v. R. Co.,* 111 S. E., 13; 118 S. C., 466, it is substantially held that it is not error to comment on evidence that is all one way. Certainly, then, it cannot be error where the fact commented upon is conceded by the other side.

The first exception cannot be sustained for the double reason that it was in the interest of the contestant and the error was adequately corrected by the Judge. The second exception cannot be sustained for the reason that the fact commented upon was one admitted by the contestant.