Hon. R. C. WATTS, Associate Justice and Chief Justice.

Hon. THOS. P. COTHRAN, Associate Justice

Hon. J. HARDIN MARION, Associate Justice

Hon. EUGENE S. BLEASE, Associate Justice

Hon. JOHN G. STABLER, Associate Justice

Hon. JESSE F. CARTER, Associate Justice

---

12214

*EX PARTE* McLEOD *IN RE* CORLEY'S ESTATE *ET AL.*

(138 S. E., 355)

1. Wills—Issue of Testamentary Capacity Must be Submitted to Jury in Case of Testimony Tending to Show Lack Thereof.— If there is any testimony on the trial of will contest tending to show that alleged testatrix was lacking in testamentary capacity, trial Judge must submit such issue to jury.

2. Wills—Evidence of Lack of Testamentary Capacity Held for Jury.—Evidence in will contest relative to testatrix's lack of testamentary capacity *held* for the jury.

3. Wills—Proof of Execution is not Sufficient to Show Assent to Contents of Will Prepared by Person Highly Interested

---

Note: Question for the jury as to testamentary capacity, see 28 R. C. L. 405; 4 R. C. L. Supp., 1823; 5 R. C. L. Supp., 1536.

As to evidentiary force of circumstances that one benefited by a will was draftsman thereof, or was active in procuring its execution, see annotation in 28 L. R. A. (N. S.) 270; 28 R. C. L. 145; 5 R. C. L. Supp., 1517.

THEREIN.—Where will was prepared and executed largely through agency of a party highly interested in result, proof of mere execution of will is not sufficient to show assent to its contents.

4. WILLS—AMOUNT OF ESTATE HELD ADMISSIBLE WHERE TESTATRIX LEFT RESIDUE AS FUND FOR HUSBAND'S HOSPITAL EXPENSES, AND AT HIS DEATH FOR USE OF CHARITY PATIENTS.—In trial of will contest, wherein testatrix left residue of her estate to constitute a fund to be used for hospital expenses, nurses, and medical treatment of husband during his life, and after his death for the maintenance and upkeep of room in infirmary for charity patients, evidence showing amount and value of estate, and source from which it was acquired, was admissible to permit jury to pass on question of reasonableness or unreasonableness of such particular provision.

5. WILLS—TESTIMONY THAT HUSBAND TURNED WAGES OVER TO TESTATRIX HELD RELEVANT IN WILL CONTEST.—Testimony in will contest relative to fact that husband turned wages over to testatrix and deposited money to her credit in bank *held* relevant and proper.

6. WILLS—OBJECTION TO ADMISSION OF EVIDENCE WITH NO GROUND OF OBJECTION WILL NOT BE CONSIDERED.—Objection to introduction of evidence in will contest, where original grounds of objection were not stated, will not be considered on appeal.

7. NEW TRIAL—NEW TRIAL IS IN DISCRETION OF TRIAL JUDGE.—Refusal of new trial is a matter exclusively in the discretion of the trial Judge.

8. APPEAL AND ERROR—EXCEPTIONS RAISING QUESTIONS NOT BEFORE TRIAL COURT WILL NOT BE CONSIDERED.—Exceptions raising questions, which were not before the trial Court, will not be considered on appeal.

Before MAULDIN, J., Florence, February, 1926. Affirmed.

Application by Dr. F. H. McLeod for the probate of the will of Mrs. Kate A. Corley, deceased. From a judgment in favor of the contestants J. J. Corley and others, proponent appeals. Affirmed.

*Messrs. J. D. Gilland* and *R. B. Scarborough,* for appellant, cite: *Burden on contestants to prove by preponderance of evidence, testamentary incapacity of testatrix:* 86 S. C., 470; 114 S. C., 275; 5 Strob., 167. *Sanity of testatrix presumed until proved otherwise:* 1 Mill Const., 216. *Competency to make valid will determined at time will was*

*executed:* 21 S. C. L., 68; Ann. Cas., 1912-A, 41; 55 Okla., 767; 95 Kan., 36; 80 N. J. Eq., 556; 152 Cal., 778; 3 Boyce (Del.), 477; 137 Ia., 613; 145 Ia., 544; 132 La., 714; 128 N. Y. S., 186; 172 Ala., 295; 118 La., 695; 43 Mont., 353; 150 N. C., 486; 142 Ia., 446; 246 Pa., 58; 86 N. J. Eq., 232; 155 Ala., 166; 135 S. E., 721; 211 Cal., 778; 28 R. C. L., 93. *Inquiry into source of income or manner and method of accumulation, irrelevant and prejudicial testimony:* 132 S. E., 811. *That neglect of claims of natural affection and an unaccountable or vicious benefaction to strangers raises a presumption that will was the act of an unsound mind, erroneous proposition of law:* 125 S. C., 165. *Same, argued in presence of jury when not specifically withdrawn is prejudicial error:* 55 N. Y., 579; 27 S. E., 531.

*Messrs. Willcox & Hardee, and Sam J. Royall,* for respondents, cite: *Where any testimony to show lack of testamentary capacity, proper to submit issue to jury:* 121 S. C., 394; 125 S. C., 52; 84 U. S., 657; 21 L. Ed., 745, 749; Rice's Rep., 280. *When law cases will be reviewed:* 92 S. C., 122; 106 S. C., 80; 114 S. C., 275. *In determining testamentary incapacity, not restricted to facts and surrounding circumstances at time of execution of will; general history of testatrix may be considered:* 107 S. C., 72; 7 Rich. L., 479; 2 Rich., 229; Shouler on Wills, Sec. 185; 6 L. R. A., 170; 152 S. E., 811; 18 S. E., 29; 11 Atl., 172; 40 Cyc., 1034. *Objections made which state no grounds for objecting are too general for consideration:* 103 S. C., 468; 66 S. C., 303; 18 S. C., 1.

May 27, 1927.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

This case comes to this Court upon an appeal by the proponent of a paper as the last will and testament of Kate A. Corley, deceased, from an order made by the Circuit Court certifying the record to the probate Court for cancella-

tion of the will, after the jury, to which the issues framed were submitted, had rendered a verdict to the effect that the alleged testatrix was without testamentary capacity.

While there are a number of exceptions, there are really only three substantial issues raised thereby. Appellant charges error in the trial of the case in the Circuit Court, in the consideration of which it is necessary to answer the following questions:

(1) Was there sufficient evidence of lack of testamentary capacity to warrant the Court in submitting that issue to the jury?·

(2) Did the Court commit error in admitting testimony as to the amount and value of the estate and the source from which the alleged testatrix acquired it?

(3) Did the Court commit error in admitting testimony of J. J. Corley to the effect that he turned over his wages to the alleged testatrix and deposited money to her credit in a bank?

We will consider the appeal under these three general heads.

Was there sufficient evidence of lack of testamentary capacity to warrant the Court in submitting that issue to the jury?

It is unnecessary to cite authorities to the effect that if there was any testimony upon the trial of this case in the Circuit Court, tending to show that the alleged testatrix was lacking in testamentary capacity, it was the duty of the trial Judge to submit that issue to the jury. As was stated by Mr. Justice Marion in *Chisolm v. Railway Co.*, 121 S. C., 394; 114 S. E., 503:

"The issues were for the jury. If, as is sometimes intimated, unjust or mistaken verdicts are occasionally rendered by juries on questions like this, the remedy does not lie in usurpation by an appellate Court of the prerogatives of the jury, to whose unanimous judgment our law rightly com-

mits the ultimate solution of these oftentimes difficult questions of mixed law and fact."

See, also *Willard v. Finch*, 125 S. C., 32; 117 S. E., 818.

As is well stated in the case of *Sioux City & Pacific Railroad Co. v. Stout*, 84 U. S. (17 Wall.), 657; 21 L. Ed., 745, 749:

"Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring, than can a single Judge."

"If, upon any construction which the jury was authorized to put upon the evidence, or by any inferences they were authorized to draw from it, the conclusion of negligence can be justified, the defendant was not entitled to this order [directing a verdict] and the judgment cannot be disturbed." *Sioux City & Pacific Railroad Co. v. Stout, supra.*

The same principles have been applied in South Carolina and in will cases:

"The questions of competency to make a will and of undue influence in procuring the will to be made, where there is no exception to the instructions of the Judge, or other legal objection, are questions of fact for the jury, and their ver-

dict will not be disturbed. * * * I have to observe that the Presiding Judge on the Circuit was satisfied, by the evidence, of the mental competency of Lucy Hatcher, to make such last will—that her mind was sound, and her will firm, and that it would have taken great address and influence to have deprived her of free agency, or swayed her at all, in a matter of importance, although her perception and memory were much decayed. That with this opinion of Lucy Hatcher's mind and firmness of purpose, he could not perceive in the evidence sufficient proof of such undue and improper influence as to disaffirm the decree of the ordinary, admitting the will to probate. But both of these questions were submitted to the proper tribunal for the decision of facts, with full instructions upon the legal meaning of a sound mind, memory and discretion in testators; and the jury have, by their verdict, annulled the will. It was within their peculiar province and jurisdiction so to do; and this Court, under all the circumstances and character of the particular case, does not perceive sufficient reason to interfere with the verdict, by ordering a new trial." _Tillman et al. v. Hatcher_, Rice, 280.

This case was in many respects similar to the case now under consideration. The three subscribing witnesses gave their opinions that the testator was of sound mind, free to act, etc. Several other witnesses were then examined, many of whom expressed their opinions. Notwithstanding this testimony of the attesting witnesses, the jury found against the will and the Court of Appeals refused to interfere with the verdict.

This Court held, in the case of _Live Stock Co. v. Bonner_, 92 S. C., 122; 75 S. E., 369, that:

"Mere insufficiency of evidence and preponderance of evidence cannot be considered by this Court in actions of law."

In the rather recent case of _In re Perry's Will_, 106 S. C., 80; 90 S. E., 401, this Court, in a unanimous opinion, decided that:

"Where in a proceeding to probate a will an inference of testatrix's incapacity could be drawn from testimony describing her condition before and after the moment of signing the will, a decree finding her incapable will not be reviewed."

The same case is authority for the proposition that the probate of a will is a law case, and that the Supreme Court will not, in such case, review findings of fact unless they are entirely unsupported by evidence. Notwithstanding the fact that no witness in that case stated a want of capacity at the moment of signing the will, the verdict of the jury declaring her incompetent was upheld.

In a still more recent case, *Anderson v. Wall,* 114 S. C., 275; 103 S. E., 562, it is held and decided that, where a motion was made in the Circuit Court for a new trial on the facts and refused, this Court has no jurisdiction in any view of the case.

Applying the same principle, if, upon any construction which the jury was authorized to put upon the evidence, or by any inference they were authorized to draw from it, the conclusion of lack of testamentary capacity can be justified, the defendant was not entitled to a directed verdict. It will probably therefore be conceded that if any relevant testimony was introduced upon the trial of this case, it was the duty of the trial Judge to submit the case to the jury.

A careful examination of the record in this case shows there was ample evidence of the lack of testamentary capacity. There was evidence for the jury to consider as to her serious physical condition and mental weakness at the instant of the execution of the paper. There was evidence as to her being peculiar, her lack of appreciation of her husband's ability and character, and as to her suffering from a delusion as to the ability, character, and habits of her husband, which became so intensified as to bias her mind against him and cause her to have no real knowledge of him in a sense that is necessary in making a testamentary disposition of property, in that at the time of the making of the will and previous thereto the testimony

is ample to show that there was a complete absence in her mind of any sense of obligation to her husband, either for the kind and constant attention bestowed upon her by him, or for the fact that he had bestowed upon her all of his earnings, and that these earnings constituted practically all of the property which she undertook to dispose of to others, to the entire exclusion of her husband except in case of physical incapacity.

It is unnecessary to quote the evidence in the case; it would serve no useful purpose. There was sufficient evidence, and from all the circumstances in the case the jury had the right to pass on the question of her testamentary capacity. The testimony illustrates her nervousness, her lack of ability to reach a decision, her changeableness under the influence of others, or her own irrational mind.

There is ample evidence that Mr. Corley was devoted and good to his wife, and had an established reputation for sobriety, industry, and ability to maintain his position and improve it throughout the period of Mrs. Corley's life. She suffered from a misconception of his ability, his capacity, and his character. The bulk of the estate that she had when she died was due to his making it and turning it over to her. If there ever was "a good Samaritan," Mr. Corley was one, as far as his wife was concerned.

From all the evidence in the case it would have been wrong in his Honor to have taken the case from the jury; there was sufficient evidence to carry the case to the jury on the question of mental incapacity, a delusion, misconception, and lack of knowledge of the person for whom as the husband, she, under all the facts and circumstances of the case, as testatrix, should have been most anxious and solicitous to have provided.

Did the Court commit error in admitting testimony as to the amount and value of the estate and the source from which the alleged testatrix acquired it?

We think not, if her mental capacity is questioned or

undue influence charged. "The safer course is to adhere to the rule, that when the capacity is doubtful at the time of execution, and there is no evidence of instructions, especially where the act is done through the agency of the party interested, the proof of mere execution is insufficient." *Mc-Ninch v. Charles,* 2 Rich., 229.

This was practically a death bed will. The will was prepared and executed largely through the agency of Mrs. Ola H. Clark, a party highly interested in the result. It is, therefore, peculiarly true in this case that the proof of mere execution of the will is not sufficient to show assent to its contents. It is a well-recognized general rule that upon the issues of mental incapacity and undue influence, which latter involves fraud, all of the facts and surrounding circumstances are to be considered. *Ex parte McKie,* 107 S. C., 72; 91 S. E., 978.

"But, as a general rule, wherever the issue is present, Was a certain document propounded as the last will of the deceased? all questions affecting the validity of the instrument may be presented; and testamentary capacity or incapacity becomes in the main a decision of fact upon all the evidence presented and the preponderance of the testimony, every material circumstance being weighed in the proof. A liberal discretion is allowed to the trial Judge in the admission of such evidence." Schouler on Wills, § 185.

"The whole personal history of the testator, mental and physical, may be freely ranged over upon the issue of insanity." Schouler on Wills, § 192.

"The general principles of law in relation to the capacity of a person to make a will are well understood. He must be of sound and disposing mind and memory, so as to be capable of making a testamentary disposition of his property with sense and judgment, in reference to the situation and amount of such property, and to the relative claims of the different persons who are or might be the objects of his

bounty." *Campbell v. Campbell,* 130 Ill., 476; 22 N. E., 622; 6 L. R. A., 170.

Mr. Justice Blease says:

"It is sometimes proper, for the purpose of ascertaining if the testator had the necessary mental capacity, to inquire into the character and value of his estate, and his associations, with, and relations and attachments to, those who would inherit his property if he should die intestate; just as it may be proper, for that purpose, to show strength or weakness of body, and delusions and hallucinations to which he may have been subject." *Sumter Trust Co. v. Holman,* 134 S. C., 412; 132 S. E., 811.

"The face of the will presents the first proof, from the presumption to be derived from the reasonableness or unreasonableness of its disposition." *McNinch v. Charles,* 2 Rich., 229.

Mrs. Corley left a donation of $10,000 to Mrs. Clark, who was no kin to her and had no special claim on her. She had an estate between $50,000 to $60,000, one-fifth of which she willed to Mrs. Clark.

The residue of her estate she willed to constitute a fund known as the "George McKee Fund," interest or income from the same to be used for the hospital expenses, nursing, and medical treatment of J. J. Corley during his life, and at his death, the interest on the fund, including any interest or income accumulated and not used during the life of J. J. Corley, should be used for the maintenance and upkeep of a room in the Florence Infirmary for the benefit of charity patients.

The jury had the right to know the amount of the estate so as to pass on the question of reasonableness or unreasonableness of the will as to this particular provision of the will.

The principles announced by the cases, *supra,* in this State are adhered to in Georgia. In the case of *Pergason v. Etcherson,* 91 Ga., 785; 18 S. E., 29, we find this:

"The will was caveated on several grounds, among them, that the testator was not of sound and disposing mind and memory. The caveatrix proved by her mother that when she married the testator he had no property, but was a poor man, and that, as her husband, he got from the estate of her father $4,500. This was objected to, on the part of the propounders, on the ground that it was irrelevant and immaterial. The objection was overruled, and this ruling is alleged to be error. We agree with the trial Judge that the evidence was admissible. Any fact or circumstance which would tend to show unsoundness of mind on the part of the testator was admissible in evidence. The fact may not be of much weight, but it was not for the Court to judge of its weight. That was the province of the jury. The testator, by his will, made a liberal provision for all of his children, except two daughters, to whom he gave five dollars each, and left nothing to his wife, further than to direct that his son Robert should support her out of the property devised to him; this to be in lieu of dower, as well as a year's support. In other words, she was to get nothing at all under the will, unless she waived the provision which the law makes for the wife in all cases. We think a jury might properly consider, in passing upon the mental condition of the testator, that a husband who had derived his property, or the bulk of it, from his wife, might not have made a provision for her so far inconsistent with that fact, and so far different from what would be expected of a husband under such circumstances, if he had been of sound and disposing mind and memory at the time of making the will. A fact thus tending to show the unreasonableness of the will would undoubtedly have a legitimate bearing upon the question of the testator's mental condition. The fact that the widow did not contest the will would not affect the admissibility of this evidence. It could not preclude the party attacking the will from showing that the provision

made for the widow was unreasonable, and indicative of mental unsoundness on the part of the testator."

The decisions of the Rhode Island Courts are to the same effect as announced in the case of *Beattie v. Thomason*, 16 R. I., 13; 11 A., 172, from which we quote as follows:

"Where a will is impeached for imbecility of mind in the testator, together with fraudulent practices by the devisees, * * * the intrinsic evidence of the will itself, arising from the unreasonableness or injustice of its provisions, taking into view the state of the testator's property, family, and the claims of particular individuals, is competent and proper for the consideration of the jury.

"The only ruling now complained of is a ruling by which the appellants were allowed to introduce certain testimony going to show that the real estate devised by the will in contest to the testator's sister was in part acquired by the earnings of Mary Knight and her daughters, although it stood in the name of the testator. The contention is that the testimony was irrelevant, but at the same time prejudicial, since it was likely to appeal to the sympathies of the jury, and lead them to suppose that this was a proper proceeding to establish the equitable claim of the stepdaughters.

"On the issue of testamentary capacity evidence is admissible of the injustice of the will consisting in a gross inequality or in disinheriting relatives especially through delusions as to them; but such apparent injustice is only a circumstance to be weighed with other evidence and is not of itself sufficient proof of incapacity. * * * On the question of the reasonableness of the will evidence is competent of the financial condition of the heirs or legatees, of the value of the residue of the source from which testator acquired his property or the purpose from which it was accumulated * * * and it may be shown that the testator's opinions of his children were mistaken." 40 Cyc., 1034, 1035.

We see no error as complained of.

Did the Court commit error in admitting testimony of J. J. Corley to the effect that he turned over his wages to the alleged testatrix and deposited money to her credit in bank?

This testimony was relevant and proper, and, again, it comes too late, being made the first time by the exception and admitted without objection at the trial, and when objection was finally made no grounds of objection were stated.

In the case of *Piero v. Southern Express Co.,* 103 S. C., 467; 88 S. E., 269, testimony was objected to, but no ground for the objection was stated. The Court, in passing upon an exception based upon the improper admission of the testimony which was objected to, used this language:

"The second objection stated no ground whatever, and is therefore too general for consideration."

To the same effect is the language in the case of *Bodie v. Railway Co.,* 66 S. C., 302; 44 S. E., 943:

"The only ground of objection interposed by the defendant to the introduction of the testimony on the trial of the case, in the Circuit Court, was that it was incompetent. This objection failed to specify in what particular the testimony was inadmissible, and is, therefore, too general to be considered."

Exceptions 4, 5, and 6 are overruled as being without merit. The seventh exception is without merit; there was sufficient evidence to carry the case to the jury, and no error in admitting the evidence as complained of. No complaint was made to his Honor as to the juryman being asleep. His attention was not called to the fact.

His Honor refused a new trial after a careful consideration. That was a matter exclusively in his discretion.

Some of the exceptions raise questions which were not before the trial Court and will not be considered.

We see no error as complained of as would warrant us in reversing the judgment.

All exceptions are overruled and judgment affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.