## 13795

IN RE. BRAZMAN'S WILL
FREDERICK v. STEWART *ET AL.*

(173 S. E., 623)

Before Dennis, J., Richland, February, 1933.

*Mr. N. J. Frederick,* for appellant,

*Messrs. A. W. Holman* and *T. P. Taylor,* for respondent,

March 6, 1934.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

Anna Brazman, colored, of Richland County, died on March 24, 1930, and a written instrument, bearing the date of July 5, 1929, was probated, in common form, as her last will and testament. Her estate, valued at about $5,000.00, came to her as the beneficiary of a policy of life insurance, under the World War Veterans' Benefit Act, on the life of

her son, who predeceased her. Her only heirs at law, it seems, were certain nephews and nieces. In the alleged testamentary instrument, one-fourth of the estate was bequeathed to Mary Bethel, and three-fourths to N. J. Frederick, and the latter was named as executor. Neither was related to Anna.

On March 22, 1922, Anna Brazman was adjudged, in the Probate Court of Richland County, to be *non compos mentis,* and a committee of her person and estate was appointed. Her nephew, John Stewart, who was first named as committee, having died, H. P. Green, Esq., in 1926, was appointed the committee. In October of 1928, Mr. Green voluntarily relinquished the trust, and N. J. Frederick was thereupon appointed the committee. Frederick arranged for his ward to live, and board, with Mary Bethel. There was at no time any revocation of the order of adjudication of Anna Brazman as a person *non compos mentis,* and she stood in that relation at the times of the execution of her alleged will and her death.

At the instance of the nephews and nieces of the deceased, there was heard in the Probate Court a proceeding to prove in solemn form her purported last will and testament. The decree being adverse to the validity of the instrument, Frederick, named as executor therein, appealed to the Court of Common Pleas.

In the trial *de novo,* before his Honor, Circuit Judge Dennis, and a jury, three issues were submitted: (1) As to the mental capacity of the deceased to make a will; (2) as to undue influence; and (3) as to fraud. The motion of Frederick, the proponent, for a directed verdict on the issue of fraud was granted; but his like motions as to the issues of mental capacity and undue influence were refused. In their verdict, the jury said there was no undue influence, but declared that the alleged testatrix did not have sufficient mental capacity to make a will. The result, confirmed by the decree of the presiding Judge, who refused a motion for a

new trial, was to invalidate, as a testamentary instrument, the purported will. The proponent has appealed to this Court.

The second and third questions, raised by the appellant, based on his exceptions numbered 2 and 3, relate: First, to the introduction in evidence of a typewritten copy of the testimony of Dr. J. A. Dillard, taken in the Probate Court in the *non compos mentis* proceeding, which appeared in the record in that proceeding, the whole record being admitted in evidence; and, second, to the use by Dr. Dillard of that copy in refreshing his memory as a witness in the trial of this cause. If we should agree with the appellant in his position that the testimony of the witness, taken in the Probate Court, should not have been introduced, or in his position that the witness should not have been permitted to use his former testimony for the purpose of refreshing his memory, which positions we are not prepared at this time to concede are correct, still we are unable to find reversible error as now complained of. This for the following reasons: The appellant did not object at any time to the use of the copy of his former testimony by Dr. Dillard in refreshing the memory of the witness. While the appellant did state that he objected to the introduction of that testimony in evidence, he gave no ground whatever for his objection. The record does not disclose that the trial Judge made a ruling on the matters now questioned by the appellant. It has been repeatedly announced by this Court that before we will consider exceptions involving the correctness of the admission of evidence, it must be shown not only that the evidence claimed to have been erroneously admitted was objected to, but that the grounds of the objection were stated. See *Allen v. Cooley,* 53 S. C., 77, 30 S. E., 721; *Holden v. Cantrell,* 88 S. C., 281, 70 S. E., 815; *Atlanta, etc., v. Victor Mfg. Co.,* 93 S. C., 397, 76 S. E., 1091; *Thornhill v. Davis,* 121 S. C., 49, 113 S. E., 370, 24 A. L. R., 617; and *Ex parte McLeod,* 140 S. C., 1, 138 S. E., 355, 356.

The appellant's fourth question relates to the charge of the trial Judge to the jury, and refers to his Exceptions 4, 5, 6 and 7. The second request to charge, on the part of the appellant, was as follows: "I charge you that one who relies on insanity, proven at another time, to invalidate a will, has the burden of proving by the preponderance of the evidence that at the moment of executing the will the testator did not have the mental capacity to do so."

After reading it to the jury, the Judge made this additional statement: "Well, that is the correct proposition, except that the time when it is proven—when a person is proven insane, that is when the insanity is proven, it relates to the time of the execution of the will and it may be taken into consideration, and where the insanity is chronic, it is presumed to continue."

The appellant now contends the "modification," given by the Court, was contradictory and vague; but we cannot agree with that view. We find, too, that it was in harmony with certain language in the eighth request to charge of the appellant, which was granted by the Court. That request was as follows: "I charge you that although a testator might have been previously adjudged *non compos mentis,* yet that would not be conclusive that he was insane at the particular time of the execution of his will, *unless the character of his insanity was of a permanent or chronic nature which fact must be proven by the contestants by the preponderance of the evidence.* I charge you further that the term *non compos mentis* is a generic term and under it is included every form of mental disease or weakness—from the slightest to the most serious—and because it is determined that one is *'non compos mentis'* raises no conclusive presumption that such a person is lacking in testamentary capacity."

We have italicized the particular language of appellant's eighth request which appears to us to correspond with the modification the Judge gave in charging the second request.

If by any chance there was any error in the modifying language of the Court, we are unable to see how the appellant may properly complain thereat, when what the Judge stated was in line with what the appellant later had him to say. In addition, the modifying instructions were proper declarations under the case of *Morris Fertilizer Co. v. Bonner,* 126 S. C., 284, 119 S. E., 826, where it was clearly indicated that insanity of a chronic or permanent nature, once proved, is presumed to continue.

The appellant requested the following instructions:

■■ *"You are instructed that a moron as such is not an insane person. A moron is defined as 'one whose intellectual development proceeds normally up to about the eighth year of age, and then arrested, never exceeds that of a normal child of about twelve years.' "*

"I charge you further that before a person can be classified as a moron, it is absolutely necessary for such an individual to be subjected to certain psychological tests by well trained experts in mental diseases, such as psychiatrists or alienists, or able psychologists, and without such tests the mental age of no person can be determined, and that is what is meant when it is said that a person has the mind of a child five or six years or any other number of years."

The part of the request which we have italicized was charged; but there was a declination to charge the remainder, and error is set up on that account. The argument, in favor of the correctness of the rejected instructions, is founded upon the facts, as stated by the appellant in his brief, that "the American Psychological Association, in 1915, adopted a resolution to discourage the use of mental tests for practical psychological diagnosis by individuals psychologically unqualified for the work; that, in 1919, the National Education Association adopted a resolution that the diagnosis of the degree of mental deficiency in the classification of children upon such diagnosis should be in the hands of highly qualified psychologists." And the New

York Mental Deficiency Law, of 1919, as to qualifications for psychologists, is referred to.

The resolutions of the Psychological Association and the National Education Association are not binding on the Courts of this State. They have not been given statutory effect by our General Assembly. Neither is the cited law of the State of New York of force in this jurisdiction. We have not been advised of any statute in our State, or any decision of our Courts, and we feel quite sure that there is no such statute or decision, that requires the expert examinations referred to in the instructions requested by the appellant before a physician in this State would be denied the right to testify that, in his opinion, a person is a moron, if the physician has had the necessary training and experience to qualify him to so testify, under our rules of evidence; and the physician in this case, Dr. Dillard, to whom, evidently, the appellant had reference in his request to charge, appears to have qualified to testify. Indeed, there was no objection to the testimony of Dr. Dillard that from his examination he was led to the conclusion that Anna Brazman was of moronic type. We must hold that the Judge very properly declined to charge as he was requested by the appellant.

The appellant further charges error on the part of the Court in "not charging the 'burden of proof' as it related to the proponent, the same as he did in reference to the contention of contestants." The instructions on that subject, given by the trial Judge, were, in our opinion, strictly in accord with the rules as to "burden of proof" in cases of this character. As per the written request of the appellant, the jury were instructed, briefly stated, that the proponent of the will was required to make out a *prima facie* case, that is, he must show that the will was executed in the manner and method provided by law, and that the testatrix had the ability to make the will; when that was done, the burden then shifted to the contestants to show by the pre-

ponderance of the evidence that such were not the facts; that one who relies on insanity, proven at another time, to invalidate a will, has the burden of proving by the preponderance of the evidence that at the moment of executing the will the testatrix did not have the mental capacity to do so; and even if a testator has been previously adjudged *non compos mentis,* yet, that would not be conclusive that he was insane at the time of the execution of the will, unless the character of his insanity was of a permanent or chronic nature, which latter fact must be established by the contestants by the preponderance of the evidence.

The appellant has not specifically pointed out any language of the Judge in his charge on the burden of proof, claimed by him to be erroneous, and we have not discovered any.

The presiding Judge declined to charge the second request of the contestants, which request we do not find set out in the record. Mr. Holman, of counsel for the contestants, in calling the Judge's attention to the fact that it had not been charged, referred to the request as the one "about insanity, is chronic." Judge Dennis stated that he did not give the charge, since the word "insanity" was used therein. In that connection, he stated: "I understand, nobody testified that this woman was insane—she was feeble-minded if she was—" At that juncture, Mr. Taylor, of counsel for contestants, unfortunately interrupted the Judge before he completed what, evidently, he was endeavoring to say, namely, that the woman "was feeble-minded, if she was mentally incapacitated at all, as shown by the evidence." In his remarks, Mr. Taylor stated: "He (evidently referring to his associate, Mr. Holman), said the doctor said the word 'insanity' included feeble-mindedness, a moron and all those other fields—in other words, you might leave it to the jury to say what it is." The Judge then said: "That is true. I have charged them that, and it is for the jury to say. If it is chronic, it is presumed to con-

tinue, of course, you know what chronic is. A person has a chronic disease, it continues."

The appellant says that the last-quoted statement was prejudicial error, since the Judge charged "as a fact that which was not testified to by a doctor, not so stated by his associate attorney at the dictation of the attorney"; that the instructions unduly impressed the jury with the idea that the alleged testatrix might be a moron, or a feeble-minded person, and did not have the mental capacity to make a will; and that the charge was contradictory.

Clearly, the language of the Judge complained of was not a charge on the facts, for he did not give to the jury any opinion or impression he had as to the testimony of the doctor, to whom Mr. Taylor evidently referred in his remarks. Obviously, when the Judge said, "That is true," he meant to agree with Mr. Taylor's statement that the question of insanity, feeble-mindedness, or the moronic condition of the woman was a matter to be left to the jury. Immediately after using the words, "That is true," the Judge said, "I have charged them that, and *it is for the jury to say*" (italics ours), showing plainly that when he used the word "true," he had reference to the legal proposition advanced by Mr. Taylor, which he had already charged the jury, and which he then repeated. We are quite sure that the jury did not get from the Judge any idea as to his opinion of the facts of the case, or any impression he had as to the testimony of any doctor. The charge was not only not contradictory, but it harmonized with the other instructions given to the jury, especially some of those which he charged at the request of the appellant.

In disposing of the exceptions relating to the charge, we have, of course, kept in mind the well-recognized legal principle that in ascertaining if any given instruction, or excerpt from a charge, is erroneous, the Court must have due regard to the entire charge to the jury. The appellant here and there has selected excerpts which he

thinks do not correctly declare the law. He has overlooked the fact that the Judge charged numerous requests made by himself, and that his general charge covered clearly and sufficiently all the legal principles involved in the case. All through the charge the jury were reminded that the will was not to be declared invalid simply because of weakness of mind, or feebleness of mind, on the part of the testatrix; and that the test of the mental capacity of a person to make a will in this State is his capacity to know his estate, the objects of his affection, and to whom he wishes to give his property. In more than one instance, the Judge read from the case of *Sumter Trust Company v. Holman,* 134 S. C., 412, 132 S. E., 811, the legal principles there announced, which were applicable to this case. The charge was especially fair to all the positions taken by the appellant.

The appellant's first question, presenting the position that a directed verdict in his favor should have been granted, on the issue of testamentary capacity, as set forth in his first exception, and the fifth question he makes, that there was error in the refusal to order a new trial, based on his Exceptions 8 and 9, can be disposed of together.

In the recent case of *Ex parte McLeod, supra,* Mr. Chief Justice Watts, speaking for this Court, said: "It is unnecessary to cite authorities to the effect that if there was any testimony upon the trial of this case in the Circuit Court, tending to show that the alleged testatrix was lacking in testamentary capacity, it was the duty of the trial Judge to submit that issue to the jury."

Without recounting, or even attempting to give, anything like a complete résumé of the evidence adduced in the trial, it is only necessary to point to a few things to show that neither of the positions of the appellant may be here sustained; for there was "testimony upon the trial * * * tending to show that the alleged testatrix was lacking in testamentary capacity." She had been declared by a Court

of competent jurisdiction, around seven years prior to the execution of the alleged will, a person of unsound mind. Many witnesses testified that her condition from that time on, until the date of her death, was just about the same. On the very day she executed the purported will, at the instance of the appellant, the other legatee, Mary Bethel, who was being paid by the appellant, out of the funds of his ward, to care for the old woman, carried her to the office of a colored physician for the purpose of having an examination of her mental condition made by two colored physicians, friends of the appellant, to ascertain, as appellant admitted, if she had sufficient understanding to make a valid will, and these two physicians were being paid to make that examination by the appellant. In their presence, and in the presence of another colored man, who had been brought in by the appellant as a witness, the purported will was executed, and the appellant and Mary Bethel were on, or about, the scene all the time. The will was prepared by the appellant, and it was he who made the old woman's "mark" to the instrument when she was executing it. Many witnesses, including a reputable white physician, testified that the old colored woman at almost all times conducted herself and acted as a child of five or six years ordinarily would act. Several of them said that she had offered at various times to make a will in favor of some person, who, at the moment, had shown her some little kind attention. The will she did make, at the instance of the appellant, made him the chief beneficiary, and his employee was to receive the remainder of the estate. There was strong evidence to show that Anna Brazman did not know the character of her estate, or its value; and that she was not cognizant of the objects of her affection, at the time she signed the purported will. The appellant occupied a position of trust toward her. He was her committee, and he acted as her attorney. If she had the mental capacity to make a will, and the mental capacity to handle her own affairs, without the guidance and care of the ap-

pellant, naturally, the jury asked, why did not the appellant, when he became aware of the improvement in her mental condition, ask the Probate Court to supersede the adjudication of *non compos mentis*, and relieve him of the rather unpleasant duties of continuing as her committee?

There is an appeal, also, by the appellant from the order of the Circuit Judge settling the case for appeal. At the instance of the respondents, the appellant was required to print thirty-eight pages, reproducing the testimony in full of three witnesses for the contestants, who are also contestants. None of the exceptions touched the admissibility of any of this testimony. The testimony did not relate to the mental capacity of the alleged testatrix. It was not important to any issue involved in the appeal. There was no necessity for it to appear in the record. This Court has repeatedly called attention to the fact that the expense of appeal records is made heavy because unnecessary matter is placed therein. This particular appeal is meritorious.

It is the judgment of this Court: First, that, in the main appeal, the judgment below be, and the same is hereby, affirmed; second, that, in the appeal as to "settling the case," the same be sustained, and the order of the Circuit Judge in that regard is reversed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.