February 13, 1948.
This action was brought by the heirs at law of Lida C. Washington, deceased, namely, Eva C. Evans, Allie C. Crouch, H.G. Carson and L.A. Carson, her brothers and sisters, to set aside the will of the said Lida C. Washington, who died in December, 1945, in Orangeburg County. The will in question was executed on October 24, 1941, and the Rector and Senior Warden serving the Protestant Episcopal Church of the Redeemer, at Orangeburg, at the time of her death, were named as executors.
The contestants contended that the testatrix lacked the mental capacity to dispose of her property by will and that the execution of the will had been procured through the undue influence of Thomas S. Tisdale, the then (and now) Rector of the church. The hearing in the Probate Court resulted in an order admitting the will to probate in due form of law. Thereafter an appeal was taken to the Court of Common Pleas for Orangeburg County and was triedde novo before a jury at the March, 1947, term.
At the conclusion of the testimony the following questions were submitted to the jury, after refusal of motions for directed verdict made by proponents and contestants:
1. Did Mrs. Washington, at the time of the execution of the paper propounded herein as her will, have sufficient mental capacity to make her will and understand its contents?
2. Was Mrs. Washington acting under undue influence of Thomas S. Tisdale when she executed the paper propounded herein as her will?
3. Is the paper propounded herein as her will the true will of Mrs. Washington? *Page 383 
The jury answered the first question "Yes," the second question "No," and the third question "Yes," all favorable to the proponents.
In due time the contestants made motions for judgmentnon obstante veredicto and for a new trial, which motions were heard by the presiding judge during term time, taken under consideration and subsequently refused by him in a rather full order dated March 29, 1947.
Timely notice of appeal was served and the case is here upon exceptions charging the trial judge with error in refusing to admit certain testimony and in refusing to instruct the jury in accord with requests submitted by the contestants, and also upon additional sustaining grounds submitted by respondents, that their motion for directed verdict should have been granted because the only reasonable inferences derivable from the evidence were that testatrix had sufficient mental capacity to make her will and that the propounded paper was her true will.
Appellants state the questions presented as follows:
"1. Did the trial judge err in refusing to charge the jury on the question of insane delusions?
"2. Did the trial judge err in excluding evidence of mental incapacity more than two years after the execution of the will in question?
"3. Did the trial judge err in refusing to charge the jury on the question of reasonableness or unreasonableness of dispositions in the said will?
"4. Did the trial judge err in refusing to charge the jury on the question of confidential relationship and undue influence in connection with the making of the said will?"
Respondents suggest the further question whether the court should not have granted their motion for directed verdict, to which the sustaining grounds are directed.
In the order refusing judgment non obstante and new trial the court acknowledged error in failing to direct the jury to find against the contention of undue *Page 384 
influence for lack of supporting evidence. Smith v. Whetstone,209 S.C. 78, 39 S.E.2d 127. We agree and moreover there was no exception to the order. Of course the error was harmless in view of the verdict. The court properly denied the conflicting motions to direct as to the other issues submitted to the jury. The evidence was at such variance that the jury may have reasonably concluded either way. That was their province, not the court's Exparte McLeod, 140 S.C. 1, 138 S.E. 355.
Appellants' fourth question may be summarily dismissed. There could have been no prejudicial error from failure to charge in any respect relating to undue influence for the evidence made no such issue. This was so held on circuit without appeal, as has been said.
Reverting to the second question; authority need not be cited for the proposition that the range in time of testimony with reference to the mental state of a testator (or, as here, a testatrix) is ordinarily within the sound discretion of the trial judge. Evidence was excluded in this case which was timed more than two years after the date of the execution of the will. Certainly that was a fair ruling and did not constitute an erroneous exercise or abuse of discretion. The very authority cited by appellants in the brief, 68 C.J. 463, negatives the alleged error. Evidence of decedent's eccentricities from childhood was admitted, but it must not be overlooked that the inquiry was as to her mental state when the will was made. Two years thereafter seems an ample overlap of the period covered by the testimony. Any later would be too remote in time to be of value and would have been calculated to confuse the jury. Annotations, 124 A.L.R. 433, 168 A.L.R. 974.
The third question relates to the failure of the court to charge contestants' seventh request, as follows: "I charge you that you can take into consideration the reasonableness or unreasonableness of the dispositions made *Page 385 
by the testatrix under the will as bearing upon the sanity or insanity of the testatrix and where the capacity of the testatrix to make a will is doubtful the reasonableness or unreasonableness of the will is a circumstance to be considered." The equivalent of it was included in the general charge which we quote: "We are not here to determine whether, according to our standards, this written instrument introduced in evidence as her will is just or unjust, but of course, the terms of the will are for your consideration, along with any and all other evidence in the case, in so far as they may throw any light upon the determination of your answers to the questions of mental capacity and undue influence." Numerous requests for instructions to the jury were made which the court considered seriatim at the conclusion of the general charge to the jury, and remarked that he would give some but that many were already covered. Clearly there was no error in failure to repeat what had in substance already been included in the instructions.
There remains for consideration only the question first stated above. Of contestant's prayers for instructions, Nos. 4, 5, 6 and 8 related to their theory of insane delusion as invalidating a will, which the court did not include in the general charge to the jury. Instead there was incorporated the following clear statement of the timehonored rule of this court in such cases, which was repeated in effect in another portion of the general charge:
"The law says, and these are the requirements as to mental capacity to execute a will, to which I invite your careful attention. The law says that a woman is mentally capable of making a will if she has sufficient intelligence — there are three elements; note them all — first: to know her estate or property; second: the objects of her affection, and third: to whom she wishes to give her property. Now, these are the three elements of mental capacity to make a will. Stating the matter a little more fully: The mental capacity requisite to the valid execution of a will would include *Page 386 
knowledge and understanding by the testatrix of its contents and of the meaning and consequences of her act. She must have at the time of the execution mentality and memory sufficient to understand intelligently the nature and purpose of the transaction, to comprehend generally the nature and extent of the property to pass by the will and her relationship to the objects of her bounty, and to understand the manner and effect of the desired disposition."
The rule was later elaborated in the instructions by the granting of the proponents' second request. It is not contended that these usual instructions contained error except in the omission to expressly include the element of insane delusion and its contended damning effect if it influenced the will. Its inclusion would have constituted an excursion afield of the law of this State as it has existed from the beginning of our judicial history. Citation of decided cases is unnecessary, but see for a collection of them 34, ht. 1, S.E. Digest, Wills, Key 31 et seq.
We adopt the conclusions of the trial judge in his order refusing judgment non obstante and new trial which follow:
"The third question raised the issue of whether or not I should have charged contestants' requests, as submitted, on the issue of mental delusions. During the argument on motion for a new trial the contestants took the position that even though the testatrix understood the nature of her act in making her will, knew her property, and knew the objects of her bounty and their relationship to her, the jury could find that Mrs. Washington was mentally incapable of making a will if they believed that Mrs. Washington disliked or had an antipathy toward her brothers and sisters, which dislike or antipathy, was not founded in or amenable to reason. In support of this position, authority from other states was cited. If, under the law of South Carolina, the fact that Mrs. Washington had an unreasonable dislike for her sisters and brothers would not constitute such mental incapacity as to deprive her of the right to make testamentary *Page 387 
disposition of her property, then the principle of law contended for should not have been submitted to the jury.
"The test of what constitutes sufficient mental capacity to make a will has been laid down by our courts on occasions too numerous to mention and, as was very ably pointed out by Justice Marion in his concurring opinion in the case of Matheson et al. v. Matheson, 125 S.C. 165,118 S.E. 312, 314: `The sanity with which we are here concerned is the sanity of the law, and not of medical science.' He also very clearly and very forcefully pointed out that the test by which testamentary capacity is determined `is the law's attempt to prescribe in as precise terms as possible the general standard of mental capacity, within the limits of which a person may "at his own free will and pleasure" * * * exercise the right of disposing of his property by will.' It is perfectly clear to me that the legal test for the determination of whether or not one has sufficient mental capacity to dispose of his property by will does not include the proviso that one must have a reasonable basis on which to found his like or dislikes of the natural objects of his bounty. In fact, our courts have held on numerous occasions that such is not the law of this State. By reference to the leading opinion of Justice Fraser in the Matheson case, supra, it will be seen that the celebrated old case of Lee's Heirs v. Lee'sExecutors, 4 McCord 183, 17 Am. Dec. 722, is cited in support of the statement that one may dispose of his property by will in any way that his caprice may prompt him. * * *
"When consideration is given to the legal test of testamentary capacity that one should understand the nature of his act in making a will, that one should have a general knowledge of his property and that one should know the objects of his bounty and his relationship to such objects, we see that the feeling which a testator has for his heirs or near relatives, whether such feeling be founded on reason or not, is a matter of no concern to the law, provided that the other *Page 388 
elements of the test are successfully met. It follows, therefore, that a charge given on mental delusion should not have been given to the jury.
"If the contention of the contestants is sustained, a new field of attack on wills will have been open which, in so far as I have been able to determine, has never been recognized in this State; and which I have endeavored to point out would be inconsistent with and a departure from the standard of mental capacity governing testamentary capacity recognized and followed by our courts for generations.
"In addition to the foregoing, I might state that the requests to charge submitted by the contestants which I refused or did not cover in my general charge were in such form that they could not properly have been submitted to the jury."
There is considerable authority elsewhere which recognizes and gives effect to the contended doctrine of insane delusion as a separate and distinct element in the law of testamentary capacity, which we deliberately do not follow for the reasons stated by the trial court and, in addition, because to do so would needlessly complicate our rule without changing it in substance. It now has the virtue of comparative simplicity. However, it is doubtful whether an instruction upon the law of insane delusion, as it exists in some other jurisdictions, would have been proper on the evidence adduced in this case. See the digests of numerous decisions in the annotations in Ann. Cas., 1916-C, page 4et seq., and 27 L.N.S. 62 et seq.
There are cited by appellants several rather recent cases in which this court had brushes with the doctrine, viz., Scarboroughv. Baskin, 65 S.C. 558, 44 S.E. 63, Sumter TrustCo. v. Holman, 134 S.C. 412, 132 S.E. 811, and Ex parteMcLeod, supra, 140 S.C. 1, 138 S.E. 355. In none of them, however, was the rule adopted. The question appears *Page 389 
in the cases collaterally and seems never to have been dealt with directly before.
The exceptions are overruled and the judgment affirmed.
BAKER, C.J., and FISHBURNE, TAYLOR, and OXNER, JJ., concur.