### 69320. CITIZENS BANK OF SWAINSBORO v. HOOKS.

(328 SE2d 755)

BEASLEY, Judge.

The defendant bank appeals from an adverse judgment entered on a jury verdict.

The plaintiff, E. Q. Hooks, his now deceased wife, Wilma Hooks, and two sons executed a $19,000 note and a security instrument to the bank on May 10, 1978. The note was renewed for two one-year periods and then on May 10, 1980, for six months or until November 6, 1980. During October 1980 Wilma Hooks was examined and tested at a hospital; her condition was diagnosed as carcinoma of the stomach. On November 3, 1980, E. Q. Hooks sought a renewal of the note due November 6, 1980. He was given a filled-in note for his wife's signature in the amount of $15,726.63 which contained provisions for credit life insurance for him and his wife. The note listed two premiums of $123.04 (total of $246.08) which were in fact financed as part of the total amount owed. Hooks took the note for his wife's signature and then returned to the bank on November 7, 1980 with the signed document which was processed by the bank. In response to an inquiry into his glumness, Hooks informed the bank loan officer, Allen Jones, that his wife, Wilma, had a malignancy. Jones told Hooks that he did not think credit life insurance could be obtained but would check. As in the past transactions with the Hookses, the bank selected the insurer; it generally divided the business between two companies. According to Jones, after the signed note was returned to him, he inquired of the bank officer who was also the insurance companies' agent whether Wilma Hooks could be covered. Upon being told she could not, he called E. Q. Hooks and told him coverage could not be provided for Wilma Hooks.

According to E. Q. Hooks, when he talked with Jones, he was told the same as before, that is, that Jones did not know whether Wilma Hooks could be covered. While Hooks admitted that he had formerly stated, when deposed, that Jones said "I'm going to have to . . . cancel that out on you," he testified that his former recitation omitted the word "thought" — what Jones actually said was he "thought" he would have to cancel. Hooks' son, Charles, testified that Jones told him that Jones thought he was going to have to cancel the

policy.

Bank records admitted into evidence reveal that the note was credited and the amount owed thereon reduced by the sum of the insurance premium for Wilma Hooks, $123.04, on November 12, 1980. Hooks testified that he was not advised of this until he went to pay off the note nor did Mrs. Hooks receive any mail to this effect. Cherokee National Life Insurance Company did issue credit life insurance on E. Q. Hooks.

E. Q. Hooks denied that he ever received any notice, written or oral, from the bank that insurance had not been obtained and that the money for the premium had been refunded. The bank admitted that it furnished no written notice and no notice was given specifically to Wilma Hooks. It relied entirely on the fact that notice was communicated to E. Q. Hooks by Jones over the telephone, a fact which was disputed by Hooks.

Wilma Hooks died on February 1, 1981. On May 13, 1981, E. Q. Hooks remitted a check for $15,651.10 to the bank in payment of the note. After the note and security deed were marked paid and returned to him, he stopped payment on the check.

On May 22, 1981, the bank filed suit against Hooks seeking to recover the balance owed on the note, reconstitution of the security deed and $100,000 damages. Hooks paid the amount of $15,651.10 and the bank voluntarily dismissed the suit on May 26, 1981.

Subsequently, in October 1981 Hooks filed suit against the bank seeking to recover for the bank's negligent failure to obtain credit life insurance on his wife. Hooks was appointed temporary administrator of his wife's estate and in that capacity was added as a party. After trial the jury returned a verdict for the plaintiff in the amount sought, and the defendant appealed.

Although one of defendant's enumerations of error involves the sufficiency of the evidence, it has not insisted upon that ground on appeal and we do not consider it. *Held*:

1. It is contended that the present action should have been asserted as a compulsory counterclaim in the former suit brought by the bank against E. Q. Hooks. Defendant argues that since that suit was dismissed the present plaintiff is now precluded from presenting this claim.

We recognize that OCGA § 9-11-13 (a) provides that any claim which arises out of the transaction or occurrence that is the subject matter of the opposing party's claim must be asserted as a compulsory counterclaim. Upon the failure to do so and upon the conclusion of the action in which the counterclaim should have been interposed such claim is thereafter barred. *Myers v. United Ser. Auto. Assn.*, 130 Ga. App. 357, 360 (203 SE2d 304) (1973). Accord *P & J Truck Lines v. Canal Ins. Co.*, 148 Ga. App. 3, 4 (251 SE2d 72) (1978); *Teague v.*

*First Bank & Trust Co.*, 244 Ga. 360 (260 SE2d 72) (1979).

However, here the proof offered did not establish that the first suit was disposed of conclusively. In fact, it was dismissed by the then plaintiff bank which would constitute a dismissal without prejudice. OCGA § 9-11-41 (a). Moreover, the suit was served on May 23, 1981, and dismissed on May 26, 1981. The defendant was not required to file a counterclaim within that time frame. See OCGA § 9-11-12.

While giving recognition to the statutory purpose of preventing protracted piecemeal litigation, such purpose would be ill served under the instant factual situation where as a practical matter there was no opportunity to assert a counterclaim. For a thorough discussion regarding the policy factors and the rationale utilized in determining at what point the failure to counterclaim acts to preclude a subsequent action, see Wright & Miller, Fed. Practice & Procedure, § 1417.

2. Counsel for the bank contends that two of plaintiff's requests to charge were erroneously given. The instructions in effect recited that where one undertook to procure insurance for another and was guilty of negligence in the undertaking, such party would be liable for the loss or damage to the limit of the agreed upon policy.

Although several reasons are now urged as to why the charges are error, the objection at trial was that there was no evidence of fraud and that such charges would be inapplicable unless fraud were involved. Basically, our review of enumerations of error regarding exceptions to jury instructions alleged to be erroneous is limited to the grounds urged before the trial court. *Jackson v. Meadows*, 157 Ga. App. 569, 571 (278 SE2d 8) (1981): "grounds enumerated as error but not raised during trial may not be raised for the first time on appeal." Accord *American Mut. Ins. Co. v. Thompson*, 169 Ga. App. 24 (1) (311 SE2d 846) (1983). Moreover, grounds urged below but not insisted upon in this court are abandoned. *Jackson v. Meadows*, 157 Ga. App. 569, 571, supra.

Even if we did consider the basis of objection in the trial court, it is clearly without merit. See *Young v. Carrollton Fed. &c. Assn.*, 159 Ga. App. 836, 838 (285 SE2d 264) (1981).

3. The failure to give the following request is assigned as error. "I further charge you, Ladies and Gentlemen, that if you determined that The Citizens Bank of Swainboro, collected a credit life insurance premium, yet the insurance agent refused to accept the premium because he had actual knowledge of the terminal illness of the borrower and her account was immediately credited by the Bank with the amount of the premium. In that event you would be authorized to return a verdict for the Defendant."

The instruction tracks the language of *Bank of Midville v. Gordy*, 224 Ga. 615 (163 SE2d 711) (1968). However, "language employed by

a judge of a reviewing court in discussing a case, or in giving reasons for a decision, is not always appropriate for use by a trial judge in charging a jury." *Hunt v. Pollard*, 55 Ga. App. 423, 426 (190 SE 71) (1937).

Here, the requested instruction omitted any reference to the necessity to give the proposed insured notice that no insurance was obtained or attainable so that if possible it might be secured elsewhere. *Consumers Financing Corp. v. Lamb*, 218 Ga. 343, 345 (127 SE2d 914) (1962).

A written request to charge should be given *only* if it embraces a correct and complete principle of law, not included in the general instructions, and if it is pertinent and adjusted to the facts of the case. *Brumby v. Brooks*, 234 Ga. 376, 383 (216 SE2d 288) (1975). The refusal to give the requested charge was not error.

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Carley and Benham, JJ., concur. Birdsong, P. J., Sognier and Pope, JJ., dissent.*

DECIDED MARCH 14, 1985.

*William H. McWhorter, Jr.*, for appellant.
*Robert S. Reeves*, for appellee.

BIRDSONG, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. OCGA § 9-11-13 (a), which requires compulsory counterclaims be asserted in an action by the opposing party on the same matter, is dispositive of this case. A compulsory counterclaim is one which "arises out of the [same] transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties. . . ." OCGA § 9-11-13 (a). This phrase is to be given "a broad and realistic interpretation by the courts. Thus, the test to be applied in determining whether a counterclaim is compulsory is whether there is a logical relationship between the claim advanced by the plaintiff and the claim asserted by the defendant. [Cit.] Any claim that is logically related to another claim that is being sued on is properly the basis for a compulsory counterclaim. 3 Moore's Federal Practice . . . § 13.13." *P & J Truck Lines v. Canal Ins. Co.*, 148 Ga. App. 3, 4 (251 SE2d 72). Hooks' basis of action arose out of the same transaction that was the subject matter of the prior action by the bank. And, not only is there a logical relationship between the two but there is a necessary relationship. Hooks' instant action for damages is for a negligent failure of the bank to procure credit life insurance on his wife, who was a co-maker of the note sued on by the bank in the first action, and the cost of the life insurance was included in the amount

represented by the note, until it was determined that life insurance could not be obtained. There can be no doubt that both actions arose out of the same transaction.

Res judicata is not applicable to this action but it is involved in the reason for Rule 13 of the CPA requiring compulsory counterclaims to be asserted in the principal action by the opposing party. Professor Moore explained that Rule 13, our OCGA § 9-11-13, was enacted to provide for uniformity because "[i]t has been argued that there is no need for a compulsory counterclaim, on the ground that the principles of res judicata and collateral estoppel more equitably serve the same function." The instant case is a prime reason why the rule serves an invaluable function because in the bank's action, defendant Hooks, rather than face judgment which could exceed the amount due on the note, paid off the amount due on the note and the bank dismissed its action. Res judicata would not apply to Hooks because no decision was obtained by a court of competent jurisdiction. *Boozer v. Higdon*, 252 Ga. 276 (313 SE2d 100). However, the voluntary dismissal under OCGA § 9-11-41 (a) "terminates the action" (*Page v. Holiday Inns*, 245 Ga. 12, 13 (262 SE2d 783)) and the principle of accord and satisfaction is applicable and would preclude the bank from further prosecution of its former claim ($15,651.10, plus interest, costs of the action, and $100,000 in damages) as the bank accepted the lesser sum of $15,651.10 in satisfaction of its demands and dismissed its action. This is an accord and satisfaction. *State Farm Fire &c. Co. v. Fordham*, 148 Ga. App. 48, 52 (250 SE2d 843); *Tinsley v. Beeler*, 134 Ga. App. 514 (215 SE2d 280); 1 EGL 136, Accord & Satisfaction, § 7. Once the accord is accepted as satisfaction, it "is a bar to all actions on this account." *Woodstock Road Invest. Prop. v. Lacy*, 149 Ga. App. 593 (1) (254 SE2d 910); *Rivers v. Cole Corp.*, 209 Ga. 406, 408 (73 SE2d 196).

Because Hooks' cause of action for the alleged negligence of the bank arose out of the same transaction as that of the action by the bank against Hooks, it is a compulsory counterclaim. Davis & Shulman, Ga. Practice & Procedure, § 10-4. If Hooks had intended to assert such a claim against the bank, it was necessary that it be asserted in the action brought by the bank. Under OCGA § 9-11-13 (a), where a compulsory counterclaim is involved, "a party may not decline to litigate in the original action and seek to bring a separate suit." *Myers v. United Ser. Auto. Assn.*, 130 Ga. App. 357, 360 (203 SE2d 304); accord *Teague v. First Bank &c. Co.*, 244 Ga. 360, 361 (260 SE2d 72).

The bank's acceptance of Hooks' compromise offer to discharge its action precludes the bank from further action in asserting its allegations of costs and damages arising from that transaction. So also should Hooks be precluded. His failure to plead his compulsory counterclaim in the original action forbids his bringing a second action to

assert that claim. *P & J Truck Lines v. Canal Ins. Co.*, supra; *Brittany Apts. v. Chapman*, 141 Ga. App. 168 (233 SE2d 27).

I would reverse the judgment of the trial court; I respectfully dissent. I am authorized to state that Judge Sognier and Judge Pope join in this dissent.