24481

Lynn GAMBLE, Respondent v. INTERNATIONAL PAPER REALTY CORPORATION OF SOUTH CAROLINA, d/b/a Haig Point, Appellant.
(474 S.E. (2d) 438)

Supreme Court

---

*Allan R. Holmes,* of *Gibbes and Holmes,* Charleston, *for Appellant.*

*D.L. Aydlette, III,* of *Harvey & Battey,* Beaufort, *for Respondent.*

Heard June 6, 1996.

Decided Aug. 19, 1996.

TOAL, Justice:

In this wrongful termination action, International Paper appeals the jury verdict in favor of Lynn Gamble. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Lynn Gamble ("Employee") began working for International Paper ("Business") in 1986. In 1992, Employee's duties included data entry of inventory information for Business's golf pro shop. This data was provided to her by the shop's head pro, Shawn Thornton. She testified that she became suspicious that Thornton was stealing from the shop and hiding the thefts through manipulation of the inventory data. Employee disclosed her suspicions to the comptroller of accounting and the human resources manager. Business personnel conducted some investigations into the allegations, but did not discover anything. Employee also told one of her co-worker friends, Susan Sisler, about Thornton's alleged stealing. Sisler was not a manager, and Employee admitted it was inappropriate for her to have spoken with Sisler about the matter.

Employee was terminated on January 12, 1993. The letter terminating her employment stated the decision was based on her making "slanderous statements to employees other than proper members of management concerning the honesty of the Pro Shop Manager."

Employee filed this action for wrongful discharge. She alleged in her complaint that Business terminated her in violation of the disciplinary procedures contained in the Hourly Employee Source Book ("handbook"). The case was tried, and

the jury returned in favor of Employee a $100,000 verdict, which, by the stipulation of the parties, was reduced to $50,000. Business appeals, arguing the trial court erred in:

1. failing to direct a verdict for Business;

2. denying Business's motion to exclude evidence of ambiguity of the handbook and allowing Employee to testify regarding her understanding of the handbook;

3. allowing prejudicial evidence of the alleged stealing by Thornton;

4. failing to disregard trial testimony of Employee that varied from her deposition testimony;

5. failing to grant a new trial, where the jury charge contained prejudicial language from a South Carolina Supreme Court case.

## LAW/ ANALYSIS

### A. *Directed Verdict*

Business argues the trial court erred in failing to direct a verdict for Business, where Employee engaged in misconduct justifying her discharge pursuant to the terms of the handbook. We disagree.

Business contends that the case presented no question of fact for the jury in that Plaintiff engaged in misconduct that allowed her termination under the handbook. It is well settled that in considering a motion for directed verdict, the trial court must view the evidence and all inferences from the evidence in the light most favorable to the nonmoving party; if the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury. *Rice v. Multimedia, Inc.*, — S.C. —, 456 S.E. (2d) 381 (1995).

During the course of her employment, Employee had received a handbook from the human resources manager.[1] The handbook contains the following disciplinary provisions:

---

[1] Business, in its statement of facts, briefly argues that the handbook did not apply to Employee. *Cf. King v. PYA/Monarch, Inc.*, 317 S.C. 385, 453 S.E. (2d) 885 (1995); *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E. (2d) 452 (1987). This matter is not properly before the court. Rule 207(b)1(B), SCACR (Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.); *Sloan Constr. Co. v. South Carolina Bd. of Health & Envtl. Control*, 285 S.C. 523, 331 S.E. (2d) 345 (1985).

Our work rules are based on common sense and good judgment. Nevertheless, some actions prohibited by the Company are listed to avoid misunderstandings. The list is not all inclusive. Violations of these rules will be handled according to our *general disciplinary procedure.*
1. The use, sale, transfer or possession of alcohol, drugs, or controlled substances while on the job. . . .
2. Falsifying any Company record, or giving false information for any Company record, including time cards.

\* \* \* \* \* \*

6. Being insubordinate, including refusing to obey or disregarding instructions, or using abusive, profane or threatening language toward any supervisory personnel.

\* \* \* \* \* \*

[The list continues, setting forth a total of 26 prohibited actions including theft of company property, gambling, possessing firearms, etc.]
Your adherence to these rules and regulations will make work more pleasant for everyone.
Usually, an oral or written warning is used to let you know when you have violated a Company rule or policy. *There are some offenses, because of their nature, that are serious enough to warrant going directly to a final written warning or a discharge without previous warnings.* Your supervisor will review warnings with you and assist you in avoiding a recurrence. . . .
Our *general disciplinary procedure* is as follows:
1. Oral warning.
2. Written warning.
3. Final written warning.
4. Discharge.

(Emphasis added.)

At trial, Employee claimed that Business did not go through the four-step disciplinary procedure set forth above before terminating her. On appeal, Business asserts that this section of the handbook contains no ambiguity and that Employee's conduct in improperly disclosing information to a non-managerial employee was so "serious" that Business was entitled to terminate Employee without going through the four-step procedure.

Viewing the evidence and all inferences from the evidence in the light most favorable to the nonmoving party, it is clear that Business was not entitled to a directed verdict. Employee's own human resources manager testified that this section of the handbook could be ambiguous and that he just had "to live with it." Thus, it was quite proper for the court to have submitted to the jury the question whether the present offense was "serious" enough to allow Business to forgo its normal disciplinary procedures. Given that the handbook language suggests the four-step procedure is required for offenses as serious as drug possession, falsifying records, insubordination, harassment of employees, and others, the court did not err in rejecting the argument that the present offense— telling another employee a manager was stealing— was so unambiguously serious that Business could forgo its normal disciplinary procedures.

### B. *Cross-Examination of Employee*

Business argues the court erred in allowing Employee to testify regarding her understanding of the handbook, while prohibiting Business from cross-examining her on the basis of her prior inconsistent statement. We disagree.

Business contends Employee testified she understood the handbook to require a progressive disciplinary procedure. At trial, Business proffered Employee's deposition testimony to show she thought, in fact, that Business could terminate an employee without going through the progressive disciplinary procedure. The court refused to admit the deposition testimony. Even if Business is correct that the court erred in its refusal to admit the testimony, there is no prejudice in this case, because in an earlier part of Employee's testimony, Business asked almost exactly the same question of Employee and cross-examined her about her deposition answer:

Q: And you admit that the handbook allows people to be immediately discharged without following the steps, doesn't it?
A: Not that I—to my understanding.
Q: Let me ask you to look at page thirty-eight of your deposition. Again, this was testimony you gave under oath.
A: Under oath, yes.

Q: Starting at page—at line nineteen, "Now, doesn't the book also say that there can be matters that would require immediate discharge without the steps?" Answer: Yes. Question: It does say that? Answer: Yes. And then the next page, "And doesn't the question—The book also say[s] that there are matters that are not listed in the book that could furnish a basis for discharge?" Answer: Yes. . . .

Because the testimony about which Business complains was cumulative, there was no error. *See McBeth v. Bishop*, 278 S.C. 443, 298 S.E. (2d) 441 (1982) (admission of testimony in the instances complained of, although technically in violation of the statute, affords no ground upon which to reverse the verdict, because testimony was only cumulative to other testimony establishing the claim).

### C. *Testimony of Former Employee*

Business argues the trial court erred in allowing the testimony of Chris Warren, a former employee, about the alleged misconduct of Shawn Thornton, because such evidence was irrelevant and highly prejudicial. We disagree.

Warren testified that Thornton stole merchandise from the pro shop. Business contends that it was improper for the court to have allowed such testimony, because it was irrelevant to the case and created a bias in favor of Employee. The admission or exclusion of evidence is a matter within the sound discretion of the trial court and absent clear abuse, will not be disturbed on appeal. *Recco Tape & Label Co. v. Barfield*, 312 S.C. 214, 439 S.E. (2d) 838 (1994).

The trial court did not abuse its direction. The testimony was relevant for two reasons. First, Business had terminated Employee for making "slanderous statements" to employees other than management. Warren's testimony went to the issue of whether Employee's statements were slanderous; if the testimony was true, then Employee did not make slanderous statements. Secondly, and related to the first reason, the testimony was relevant to the issue of the seriousness of the offense. Because the jury had to determine whether Employee's actions were so serious as to warrant termination without ref-

erence to progressive disciplinary measures, it would be important for the jury to know whether her statements were slanderous. If her statements were false and slanderous, than that arguably is much more serious than if her statements about Thornton were true.

## D. *Employee's Testimony*

Business argues the court erred in failing to direct a verdict for Business in that any asserted material issue of fact was impermissibly derived from the conflict between Employee's trial testimony and her deposition testimony. As this issue is unpreserved, the Court need not address it. *Schofield v. Richland County Sch. Dist.*, 316 S.C. 78, 447 S.E. (2d) 189 (1994).

## E. *Jury Charge*

Business asserts the trial court erred by charging the jury with argumentative language from *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E. (2d) 452 (1987). We agree. The portion of the jury charge at issue is:

> An employer is under no obligation to write and distribute an employee handbook or a bulletin. Once an employer voluntarily chooses to publish a handbook or bulletin and orally assures the employees that [the] provisions of those publications will be followed, strong equitable and social policy reasons militate against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own pleasure. Having announced a handbook policy presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat that promise as illusory.
>
> If an employer wishes to issue policies, manuals or bulletins as purely advisory statements with no intent of being bound by them and where they desire to continue under the employment at will policy, the employer is certainly free to do that. This can be accomplished merely by inserting a conspicuous disclaimer or provision into the written document.
>
> It is patently unjust to allow an employer to couch a handbook, bulletin or other such material in mandatory terms and then allow the employer to ignore those policies

as a gratuitous, nonbinding statement of general policy whenever it works to the employer's advantage to do so. Assuredly the employer would view these policies differently if it were the employee who failed to follow them. . . .

This charge is nearly a direct quotation from *Springs*, only having been modified grammatically.

This court has held that it is not improper for a trial judge to read to the jury from appellate decisions. *See Sumter Trust Co. v. Holman*, 134 S.C. 412, 132 S.E. 811 (1926); *Richardson v. Northwestern R. Co.*, 131 S.C. 57, 126 S.E. 397 (1924). However, language giving reasons for a decision is not always appropriate for use by a trial judge in charging a jury. *See Citizens Bank v. Hooks*, 173 Ga. App. 865, 328 S.E. (2d) 755 (1985); *Bankers Multiple Line Ins. Co. v. Farish*, 464 So. (2d) 530, 533 n. 3 (Fla. 1985) ("The fact that a statement of reasoning may be set forth in a judicial opinion does not mean that it is a proper jury instruction."); *Boyd v. Boyd*, 680 S.W. (2d) 462, 466 (Tenn. 1984) ("Nor is every statement in an appellate opinion necessary or appropriate for inclusion in a jury instruction.").

The charge here was inappropriate. It was not a recitation of the law as set forth in *Springs;* it was a recounting of the policy arguments and rationale of the *Springs* decision. This policy language, in the context of the *Springs* decision, is slanted against employers. As such, inclusion of this language in a jury charge was prejudicial and denied Business a fair trial. Accordingly, Business is entitled to a new trial.

## CONCLUSION

Based on the foregoing, this case is REVERSED AND REMANDED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.