540 S.E.2d 484

**MacKennon WATSON, a Minor, by his Guardian
ad Litem, Susan WATSON, Respondent,**

v.

**David CHAPMAN, M.D., Appellant.**

and

**Susan Watson and Don Watson, Respondents,**

v.

**David Chapman, M.D., Appellant.**

**No. 3272.**

Court of Appeals of South Carolina.

Heard Nov. 8, 2000.

Filed Dec. 18, 2000.

Rehearing Denied Feb. 12, 2001.

474

John B. McCutcheon, Jr., Mary Ruth M. Baxter, and Arrigo P. Carotti, all of McCutcheon, McCutcheon & Baxter, of Conway, for appellant.

David W. Goldman, Diane M. Rodriguez, and Kristi F. Curtis, all of Bryan, Bahnmuller, Goldman & McElveen, of Sumter, for respondents.

CURETON, Judge:

In this medical malpractice action, Susan and Don Watson sued Dr. David Chapman for the premature delivery of their son MacKennon and the resulting permanent injury to his lungs. A jury found Dr. Chapman negligent and awarded actual damages in the amount of $106,000 to MacKennon and $100,000 to his parents. Dr. Chapman appeals. We affirm.

## FACTS/PROCEDURAL HISTORY

Mrs. Watson sought obstetrical care for her third pregnancy from Baroody, Chapman & Chapman, OB–GYN, in late 1991. Initially, she was examined by Dr. David Chapman, a partner in the practice, on or about December 30, 1991. Dr. Chapman informed Mrs. Watson that her delivery date would be August 11, 1992. Thereafter, Mrs. Watson saw another physician of the practice for her regularly scheduled office visits.[1] During the pregnancy, Mrs. Watson developed gestational diabetes and was referred to another physician who treated the condition with a restricted diet.

Mrs. Watson next encountered Dr. Chapman in the thirty-fourth or thirty-fifth week of her pregnancy during an office visit. At that time, Dr. Chapman scheduled Mrs. Watson for an amniocentesis to be performed on July 15, 1992, with a possible cesarean section to follow on July 16th.[2]

During the July 15th appointment, Dr. Chapman took an ultrasound, but was unable to perform the amniocentesis due to the position of the placenta. Nevertheless, he informed

---

1. She saw Dr. John Chapman, who is unrelated to appellant David Chapman.

2. Mrs. Watson reached the thirty-sixth week of her pregnancy on July 15, 1992.

Mrs. Watson that her baby was "big enough" for delivery and that he would perform a cesarean section the next day even though she was not in labor and there were no signs of fetal distress.

Dr. Chapman delivered MacKennon by cesarean section on July 16, 1992. He weighed eight pounds, four ounces at birth. Despite MacKennon's size, his lungs were not fully developed because his mother's gestational diabetes had retarded their normal development. Dr. Chapman had not determined the state of MacKennon's lungs prior to delivery even though a diagnostic test was available to assess fetal lung maturity.

MacKennon developed Respiratory Distress Syndrome (RDS) within twenty-four hours of birth, for which he was intubated with oxygen and transferred to the Neonatal Intensive Care Unit (NICU) at McLeod Regional Medical Center. MacKennon was discharged from McLeod on August 3, 1992. Although his discharge summary indicated his prognosis was good, MacKennon continued to have breathing difficulties which required further hospital visits and treatment.

On July 13, 1995, the Watsons filed the instant action against Dr. Chapman alleging he was negligent in delivering MacKennon four weeks premature without medical justification and in violation of accepted medical standards. They also asserted that Dr. Chapman "was addicted to the use of drugs and narcotics to the extent that he was not mentally, emotionally or physically able to have provided competent medical care and attention to" Mrs. Watson and MacKennon.

Prior to trial, the circuit court rejected the Watsons' motion to compel discovery of Dr. Chapman's alcohol treatment records because such disclosure would violate federal and state confidentiality statutes. However, the trial court also rejected Dr. Chapman's motion in limine to exclude all reference to his alcohol addiction.

## LAW/ANALYSIS

### I. Admission of Evidence Concerning Alcohol Addiction

Dr. Chapman argues the trial court abused it discretion by admitting irrelevant and unduly prejudicial evidence concerning his alcohol addiction. He also contends federal and state

confidentiality statutes prohibit such disclosures. We disagree.

On May 11, 1993, Dr. Chapman entered into a written agreement ("Interim Agreement") with the South Carolina Board of Medical Examiners ("Board") wherein he acknowledged his addiction to alcohol and agreed to treatment and monitoring in exchange for the Board's commitment to continue his licensure on a conditional basis subject to the terms of the agreement. The Interim Agreement further provided "that, pursuant to the South Carolina Freedom of Information Act (S.C.Code Ann. § 30–4–10, *et seq.* (1986)), this Interim Agreement is a public document." The Interim Agreement was replaced by a private agreement on August 23, 1995.

During discovery, Dr. Chapman revealed he had been treated for alcohol dependency at Fenwick Hall in 1989 and that he had returned to Fenwick for inpatient treatment less than a month after MacKennon's July 16, 1992 delivery. He explained that he "went back to Fenwick at that time [because he had] returned to drinking on the weekends and ... thought [he] was drinking too much on the weekends." Dr. Chapman also admitted he was drinking during the weekend prior to MacKennon's delivery and that his partners in the OB–GYN practice ousted him from the partnership less than 30 days after the delivery. Dr. Chapman claimed the partners believed he "had ample time for rehabilitative measures and due to certain recent events they felt that it was necessary to sever their partnership with me."

Dr. Chapman filed a motion in limine to exclude the Interim Agreement and his admissions concerning his alcohol dependency because "such evidence is irrelevant to this litigation, more prejudicial than probative, and that admission of such evidence is prohibited by both State law (South Carolina Code Ann. § 44–22–100) and Federal law (42 U.S.C. § 290dd–2) and applicable case law." Specifically, he argued the evidence in question was irrelevant because it did not demonstrate he was impaired at the time he treated Mrs. Watson and would only serve to prejudice him in the eyes of the jury. The trial court denied the motion and admitted the evidence because "[t]he probative value is not substantially outweighed by any prejudicial effect." Dr. Chapman renewed his objection to the evi-

478

dence at trial and argues on appeal that it was error for the jury to consider it.

■ The admissibility of evidence lies within the sound discretion of the trial court whose decision will not be overturned on appeal absent a clear abuse of that discretion. *Gamble v. Int'l Paper Realty Corp.,* 323 S.C. 367, 474 S.E.2d 438 (1996); *Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894 (1994); *Carlyle v. Tuomey Hosp.,* 305 S.C. 187, 407 S.E.2d 630 (1991). In this case, the trial court found that the evidence of Dr. Chapman's alcohol addiction was highly relevant to the Watsons' negligence claims such that its probative value outweighed any prejudicial effect. In so finding, the court did not abuse its discretion.

Relevant evidence is merely evidence which tends to prove or disprove the existence of a material fact. *See* Rule 401, SCRE (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The dictates of Rule 401 are subject to the balancing requirement of Rule 403, SCRE, which requires a court to exclude relevant evidence upon a showing that its admission would be more prejudicial than probative. *See* Rule 403, SCRE (excluding relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice").

■ The fact that a physician may have been an alcoholic while practicing medicine does not, in and of itself, create a separate issue or claim of negligence; however, it is relevant "when that alcoholism translates into conduct falling below the applicable standard of care." *Ornelas v. Fry,* 151 Ariz. 324, 727 P.2d 819, 823 (Ct.App.1986). The part, if any, which Dr. Chapman's alcohol dependency played in his decision making process was a highly contested issue in this case and was properly submitted to the jury for a decision. Although Chapman claimed he was not under the influence at the time he decided not to perform the amniocentesis or at the time of the surgical delivery, the Watsons put forth sufficient evidence to the contrary thereby creating a jury question. Accordingly, we agree with the circuit court's conclusion that the evidence

was relevant and its probative value was not outweighed by any prejudicial effect.

Dr. Chapman's reliance on federal and state confidentiality statutes as a legal basis for excluding the evidence of his alcohol dependency is misplaced because the evidence complained of is not within the ambit of the statutes.

■ The federal confidentiality statute provides in pertinent part:

> *Records of the identity, diagnosis,* prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States *shall,* except as provided in subsection (e) of this section, *be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.*

42 U.S.C.A. § 290dd–2(a) (Supp.2000) (emphasis added). Obviously, the Interim Agreement is not a patient diagnostic or treatment record as described by the statute.

■ Assuming that the Interim Agreement fell within the protection afforded by the statute, Dr. Chapman relinquished that protection by agreeing to the public disclosure of the agreement. *See id.* § 290dd–2(b)(1) (creating an exception whereby a patient may consent to public disclosure of his or her record). Furthermore, a court of competent jurisdiction may order the disclosure of a protected record upon a showing that good cause exists to do so. *Id.* § 290dd–2(B)(2)(c).

■ Similarly, section 44–22–100(A) of the South Carolina Code protects the confidentiality of certain medical records:

> Certificates, applications, records, and reports made for the purpose of this chapter ... and directly or indirectly identifying a mentally ill or alcohol and drug abuse patient or former patient or individual whose commitment has been sought must be kept confidential and must not be disclosed....

S.C.Code Ann. § 44–22–100(A) (Supp.1999).

This statute also protects a *patient's medical records* from unauthorized disclosure, but does not shield a patient from

being questioned directly about his condition and any treatments he may have received, subject to the strictures of the rules of evidence. In this case, the circuit court did not order Dr. Chapman to produce medical records, it merely allowed the Watsons to extract testimony from Chapman concerning his alcohol dependency and to rely on a written agreement which, by its own terms, was a part of the public domain pursuant to the South Carolina Freedom of Information Act.

## II. Admission of Testimony Concerning Alcohol Addiction

Chapman next argues the circuit court erred by allowing testimony concerning his alcohol addiction because the evidence was irrelevant, unduly prejudicial, and violative of federal and state law. We disagree.

As part of his motion in limine, Dr. Chapman objected to the statements of lay observers who claimed he appeared impaired during and immediately after the delivery.[3] He argued the statements were refuted by the testimony of at least six other witnesses who were in the operating room at the time of the cesarean section and should be excluded from evidence.

The circuit court ruled in limine that the statements were relevant and not unduly prejudicial:

[L]ooking at the totality of everything, looking at the fact that this Defendant was treated as an inpatient for an alcohol problem, looking at the fact that by his own admission he was relapsed and drank at least the weekend before the delivery, taking into consideration his conduct, taking into consideration he himself some 27 days after the operation, you know, realized that the—his relap[se] is so serious that it required further inpatient treatment, in looking at the fact that he was terminated by his associates, then I find the evidence is relevant. So I would allow it.

---

**3.** Mr. Watson's statement indicated he thought Dr. Chapman appeared impaired because he was enormously "happy" during the delivery and kept asking the operating room staff to remind him to perform a tubal ligation on Mrs. Watson after the delivery was concluded. June Collins, Mrs. Watson's sister-in-law, claimed that Dr. Chapman "acted like he [was] on drugs" when she saw him in Mrs. Watson's hospital room one to two days after the delivery. Ms. Collins works with women suffering from alcohol and drug dependency in Georgia.

■ "Making a motion in limine to exclude evidence at the beginning of trial does not preserve an issue for review because a motion in limine is not a final determination. The moving party, therefore, must make a contemporaneous objection when the evidence is introduced." *Samples v. Mitchell,* 329 S.C. 105, 108, 495 S.E.2d 213, 215 (Ct.App.1997).

■ At trial, Mr. Watson and June Collins testified to the substance of their statements, but Dr. Chapman did not renew the objections raised in his motion in limine. Accordingly, any objection to their testimony was waived. Further, to the extent Chapman asserts counsel for the Watsons made improper remarks during opening statements or closing arguments concerning his condition, no objection was raised at trial so as to preserve this issue for appeal. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997) (contemporaneous objection must be made to and ruled upon by trial judge to preserve issue for appellate review). In any event, for the reasons discussed in section I, we find the evidence was relevant on the issue of Chapman's alleged negligence and not unduly prejudicial.

### III. Scope of Cross-examination of a Defense Expert

Dr. Chapman contends the trial court should not have allowed the Watsons to cross-examine a defense expert concerning the appropriate advice a physician should provide parents prior to a premature birth inasmuch as the Watsons had dropped their claim involving informed consent. We disagree.

■ Dr. Sandford Estes was called as a defense expert at trial. During cross-examination, counsel for the Watsons asked him "what is the practice in discussions with couples who are the parents of a 36 week fetus that a physician's considering delivering at 36 weeks?" The trial court allowed the question over Dr. Chapman's objection because the testimony was relevant to Chapman's competency and whether his substance abuse affected his ability to provide treatment for Mrs. Watson that did not fall below medically accepted standards. Dr. Estes indicated the usual practice was to discuss the potential problems of a premature birth, including the

potential hazard of undeveloped lungs, with the parents prior to the birth.

The scope of cross-examination rests largely in the discretion of the trial court. *Cornwell v. Plummer*, 265 S.C. 587, 220 S.E.2d 879 (1975). "The admission or exclusion of evidence is a matter within the sound discretion of the trial court and absent clear abuse, will not be disturbed on appeal." *Gamble v. Int'l Paper Realty Corp.*, 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996); *see also Recco Tape & Label Co. v. Barfield*, 312 S.C. 214, 439 S.E.2d 838 (1994).

We agree with the circuit court's determination that Dr. Estes's testimony was relevant to the central issue of this case. Accordingly, we find the trial court did not abuse its discretion by allowing this question.

### IV. Directed Verdict

Dr. Chapman contends the trial court erred by denying his motion for a directed verdict because the only reasonable inference to be drawn from the evidence is that he met the applicable standard of care. We disagree.

Initially, we note that Dr. Chapman did not properly present this argument as a separately enumerated issue as required by the South Carolina Rules of Appellate Procedure. *See* Rule 208(b)(1)(B), SCACR (requiring every issue raised to the appellate court to be set forth in the statement of issues on appeal); Rule 208(D), SCACR (requiring an appellate brief to be divided into as many parts as there are issues to be argued). In any event, the contention is without merit.

A directed verdict is warranted where only one reasonable inference can be drawn from the evidence. *Adams v. G.J. Creel & Sons*, 320 S.C. 274, 465 S.E.2d 84 (1995); *Brady Dev. Co. v. Town of Hilton Head Island*, 312 S.C. 73, 439 S.E.2d 266 (1993). In deciding a motion for a directed verdict, all inferences must be viewed in the light most favorable to the non-moving party. *Taylor v. Medenica*, 324 S.C. 200, 479 S.E.2d 35 (1996). In a medical malpractice action, a plaintiff relying on expert testimony must produce evidence that the defendant's negligence most probably caused the injuries alleged. *Id.*

At trial, the Watsons presented expert testimony which established that MacKennon's delivery was not medically justified, that it fell below the medically accepted standard of care, and was the proximate cause of MacKennon's respiratory difficulties. Additionally, Dr. Chapman's own expert and former medical partner, Dr. John Chapman, admitted it would be violative of the standard of care to elect to deliver a child at 36 weeks gestation without first performing an amniocentesis. Dr. John Chapman also admitted that Dr. Chapman was ousted from their medical practice shortly after MacKennon's birth because of his addiction to alcohol.

We find there was sufficient evidence to present a jury question as to Dr. Chapman's alleged negligence in this case. Accordingly, the circuit court did not err in denying Chapman's motion for a directed verdict.

For the foregoing reasons, the judgment below is

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.