THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Underground
 Boring, LLC, Respondent,
 
 
 

v.

 
 
 
 P Mining, Inc., Appellant.
 
 
 

Appeal From Horry County
Steven H. John, Circuit Court Judge

Unpublished Opinion No. 2011-UP-372
 Submitted April 1, 2011  Filed July 21,
2011    

AFFIRMED

 
 
 
 Douglas Charles Baxter, of Myrtle Beach,
 and Mason A. Summers, of Columbia, for Appellant.
 William A. Bryan, of Surfside Beach, for
 Respondent.
 
 
 

PER CURIAM: In
 this breach of contract action, P Mining appeals the trial court's judgment in
 favor of Underground Boring in the amount of $99,041.35 plus $29,369.48 in
 prejudgment interest.  We affirm.[1]  
FACTS/PROCEDURAL HISTORY
The City of North Myrtle
 Beach (the City) hired P Mining to replace all overhead utility lines with underground
 ones.  It provided P Mining with plans and detailed specifications for the
 project.  P Mining subcontracted with Underground Boring for boring and
 installation of conduit.  The parties entered into a one-page contract, which
 listed the prices for the different sizes of conduit.  The contract did not
 specify the depth that the conduit should be buried.  The parties subsequently
 agreed to a price adjustment.  
After Underground Boring
 finished its work, Santee Cooper complained to P Mining that the conduit had not
 been buried deeply enough in some places.  On July 29, 2005, Charles Permenter
 with P Mining wrote Donnie Stewart of Underground Boring to inform him P Mining
 would not pay any funds towards the outstanding balance until Stewart met with
 the City and Santee Cooper and they signed off on all of the bores completed. 
 Stewart testified the meeting was never scheduled.  P Mining requested
 Underground Boring correct the installation of conduit that had not been buried
 deeply enough in the median of Ocean Boulevard.  Stewart stated he was willing
 to make the repair if P Mining paid the remaining funds owed Underground
 Boring.  The payment was never forthcoming.  Other than the Ocean Boulevard
 location, Stewart never received any written requests identifying particular
 areas P Mining, the City, or Santee Cooper wanted Underground Boring to make corrections.  
A dispute also arose between
 the City and P Mining concerning the amount of conduit buried.  Because the
 City had concerns about the depth of the conduit, as well as the quantity P
 Mining had billed, it withheld payment from P Mining.  P Mining, in turn,
 withheld payment from Underground Boring.  
Underground Boring brought
 this action seeking payment of the balance due of $116,656.35 in addition to
 interest, attorney's fees, and costs.[2] 
 In its answer, P Mining asserted Underground Boring had breached the contract.  
After a bench trial, the
 court found Underground Boring was never made aware of any specifications and
 specifically was not told a depth for the borings.  The court noted the
 contract between P Mining and Underground Boring did not require a specific
 bury depth, nor did the contract incorporate by reference the terms of the City's
 contract and specifications.  Thus it held P Mining was not entitled to a
 setoff for the amounts it claimed it incurred to bury the conduit deeper.  The
 trial court also rejected P Mining's contention Underground Boring had
 submitted bills for more than the actual linear footages bored.  The court
 further found P Mining was entitled to a set-off for repairs it made to sewer
 lines Underground Boring hit on three separate occasions.  Thus, it held
 Underground Boring was owed an unpaid balance of $116,656.35, less the amount
 owed for the repairs by P Mining, leaving an amount of $99,041.35.  It denied
 Underground Boring's request for attorney's fees and prejudgment interest.  
Both parties filed motions to
 alter or amend.  The court denied P Mining's motion.  It also denied
 Underground Boring's motion to the extent it requested attorney's fees and
 interest pursuant to section 27-1-15 of the South Carolina Code (2007), but
 granted prejudgment interest in the amount of $29,369.48 pursuant to section
 34-31-20(A) of the South Carolina Code (Supp. 2010).  It denied the remainder
 of the motion requesting the court exclude the set-offs for the repairs.  This
 appeal followed.  
STANDARD OF REVIEW
"An action for breach of
 contract is an action at law."  Electro Lab of Aiken, Inc. v. Sharp
 Constr. Co. of Sumter, Inc., 357 S.C. 363, 367, 593 S.E.2d 170, 172 (Ct. App.
 2004).  In a law action tried without a jury, this court's review is limited to
 correcting errors of law, and we are required to uphold the trial court's findings
 of fact unless there is no evidence to support them.  Townes Assocs., Ltd.
 v. City of Greenville, 266 S.C. 81, 85-86, 221 S.E.2d 773, 775 (1976).
LAW/ANALYSIS
A. 
 Required Burial Depth
P Mining argues the trial
 court erred in finding Underground Boring was not required to install the
 conduit at a minimum burial depth of three feet.  It first contends the court
 erred in finding Underground Boring was never made aware of the requirement set
 forth in the plans and specifications for the project that the conduit be
 installed at a minimum depth of three feet.  
The City's detailed specifications
 for the project provided "Conduit depth must have at least 3' of cover
 over the conduits to meet code.  Conduits in areas where proposed and existing
 water, sewer, and drainage exist must be installed at a depth approved by a
 City of North Myrtle Beach inspector on site."  Stewart stated that while
 he was given the plans, he was never provided with the specifications.  The
 trial court held, "Based on the testimony presented and the Court's
 viewing of the credibility of the witnesses, the Court specifically finds that
 [Underground Boring] was never made aware of any specifications and
 specifically was not told a depth for the borings."  "Credibility
 determinations regarding testimony are a matter for the finder of fact, who has
 the opportunity to observe the witnesses, and those determinations are entitled
 to great deference on appeal."  Okatie River, L.L.C. v. Southeastern
 Site Prep, L.L.C., 353 S.C. 327, 338, 577 S.E.2d 468, 474 (Ct. App. 2003). 
 We hold the trial court's finding is supported by the evidence.  
P Mining next contends the
 trial court erred in concluding that the contract between P Mining and
 Underground Boring was unambiguous and in refusing to consider parol evidence
 that demonstrated Underground Boring was required to bury the conduit at a minimum
 depth of three feet.  
"It is a question of law
 for the court whether the language of a contract is ambiguous."  S.C.
 Dep't of Natural Res. v. Town of McClellanville, 345 S.C. 617, 623, 550
 S.E.2d 299, 302-03 (2001).  An ambiguous contract is one that can be understood
 in more ways than just one or is unclear because it expresses its purpose in an
 indefinite manner.  Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.,
 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977).  "[W]here a contract is
 ambiguous, parol evidence is admissible to ascertain the true meaning and
 intent of the parties."  Penton v. J.F. Cleckley & Co., 326
 S.C. 275, 280, 486 S.E.2d 742, 745 (1997).
The one-page contract did not
 refer to the plans and specifications the City of North Myrtle Beach gave P
 Mining nor did it incorporate by reference the contract between the City of
 North Myrtle Beach and P Mining.  As stated above, we find the record supports
 the trial court's ruling that Underground Boring was never made aware of any
 specifications and specifically was not told a depth for the borings.  As
 Underground Boring was not aware of this requirement, it could not have been
 the intent of the parties to have this requirement in the contract.  Thus, even
 if the contract was ambiguous, we find no error in the court's ruling on this
 issue.      
P Mining argues the trial
 court erred in failing to find Underground Boring breached its contract with P
 Mining because Underground Boring did not bury the conduit to the depth
 required.  As stated above, the record supports the trial court's finding that the
 contract between the parties did not require a burial depth of three feet. 
 Accordingly, we find no error in the court's ruling on this issue.  
Finally, P Mining argues
 Underground Boring installed the conduit in a manner that not only failed to
 comply with the depth requirements of the plans and specifications for the
 Project, but also failed to comply with the industry standard for minimum
 boring depth.  In its order on the parties' motions to alter or amend, the
 trial court reaffirmed its ruling Underground Boring was not in breach.  As the
 trial court noted, Stewart testified that where possible, the conduit was
 buried to meet industry standards of thirty to thirty-six inches.  However,
 occasionally, because of existing utilities, the bore might be shallower or
 deeper.  In both of the examples cited by P Mining in its brief where the
 conduit was not buried deeply enough, an existing storm drain was under the
 conduit.  We find no error in the court's ruling on this issue.  
B.  Quantity of Conduit Installed
P Mining argues the trial
 court erred in finding Underground Boring was entitled to be paid for the
 installation of a total of 47,092 linear feet of conduit.  It first contends the
 trial court erred in allowing and considering hearsay evidence of former
 employees of Underground Boring who did not appear at trial.  
Generally, "[t]he
 admission or exclusion of evidence is a matter within the sound discretion of
 the trial court and absent clear abuse, will not be disturbed on appeal."  Gamble
 v. Int'l Paper Realty Corp. of S.C., 323 S.C. 367, 373, 474 S.E.2d 438, 441
 (1996).  As an exception to the hearsay rule, the South Carolina Rules of
 Evidence provide for the admissibility of records of regularly conducted
 activity.  Rule 803(6), SCRE.  This rule states the following is admissible:

 A
 memorandum, report, record, or data compilation, in any form, of acts, events,
 conditions, or diagnoses, made at or near the time by, or from information
 transmitted by, a person with knowledge, if kept in the course of a regularly
 conducted business activity, and if it was the regular practice of that
 business activity to make the memorandum, report, record, or data compilation,
 all as shown by the testimony of the custodian or other qualified witness,
 unless the source of information or the method or circumstances of preparation
 indicate lack of trustworthiness; provided, however, that subjective
 opinions and judgments found in business records are not admissible.  The term "business"
 as used in this subsection includes business, institution, association,
 profession, occupation, and calling of every kind, whether or not conducted for
 profit.

Id.
P Mining asserts the records
 of the measurements taken by Underground Boring's employees and Underground
 Boring's invoices do not fall within this exception because "the source of
 information or the method or circumstances of preparation indicate lack of
 trustworthiness."  
Stewart testified that as his
 supervisor Tony Knight finished installing conduit in an area, he would measure
 the area with a measuring wheel.  Knight would either submit a written report
 with the measurement or call into the office where Stewart or his secretary
 would record the measurement.  The secretary used these measurements in
 preparing the invoices submitted to P Mining.  The measurements were also used
 in calculating Knight's payments.  Stewart testified he had never received any
 complaint from other jobs about Knight's measurements being excessive.  The
 evidence shows the records Underground Boring submitted were kept in the course
 of a regularly conducted business activity and their method of preparation did
 not indicate a lack of trustworthiness.  Accordingly, we find the trial court
 did not abuse its discretion in admitting the records.  
P Mining also argues the
 trial court should have used the linear footage measurement made by a City
 employee.  City employee Travis Dupree testified that after the dispute over
 the amount of conduit installed arose, he and P Mining employee Rocky Permenter
 made their own measurements of the project.  He stated his measurements
 indicated a total of 44,898 feet.  Dupree acknowledged on cross examination he
 had measured the project by himself before measuring it with Permenter. 
 Although the total of that measurement was only 70 linear feet greater from the
 one measured with Permenter, the measurement of each individual section was
 different.  When taking the higher measurement for each section, the total was
 48,399 feet.  The trial court noted "P Mining failed to produce testimony
 to explain which of the two measurements for the various sections was correct."  
The records Underground
 Boring presented into evidence indicated the total footage for its work was
 47,092 feet.  As the record contains evidence to support the trial court's
 finding that Underground Boring was entitled to payment for 47,092 linear feet
 of conduit, we find no error in the trial court's ruling.  
C.  Prejudgment Interest
P Mining argues the trial
 court erred in awarding Underground Boring prejudgment interest.  The only
 basis for this argument is its contention that the trial court erred in
 granting a judgment in favor of Underground Boring.  As we affirm the judgment,
 we also affirm the award of prejudgment interest.
AFFIRMED.
HUFF, SHORT,
 and PIEPER, JJ., concur.  

[1] We decide this
 case without oral argument pursuant to Rule 215, SCACR.
[2] Underground
 Boring originally named as defendants Charles L. Permenter and Christopher A.
 Permenter d/b/a P Mining Co.  By stipulation of the parties, P Mining was
 substituted as the proper defendant in lieu of Charles and Christopher
 Permenter.